MANATT, PHELPS & PHILLIPS, LLP
SUSAN E. HOLLANDER (Bar No. CA 133473)
BRITT L. ANDERSON (Bar No. CA 212092)
E-mail: patrademarks@manatt.com
1001 Page Mill Road, Building 2
Palo Alto, CA 94304-1006
Telephone: (650) 812-1300
Facsimile: (650) 213-0260

MANATT, PHELPS & PHILLIPS, LLP
SHARI MULROONEY WOLLMAN (SBN 137142)
E-mail: swollman@manatt.com
11355 West Olympic Boulevard
Los Angeles, CA 90064
Telephone: (310) 312-4000
Facsimile: (310) 312-4224

Attorneys for Plaintiff
24 Hour Fitness USA, Inc.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT

OAKLAND DIVISION

| 24 Hour Fitness USA, Inc., | No. CV 08 01681 SBA |
|---|---|
| Plaintiff, | **24 HOUR FITNESS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS** |
| vs. | |
| Apex Stores, LLC, Apex, LLC, Apex at Home, LLC, | |
| Defendants. | |

# TABLE OF CONTENTS

**Page**

I.      SUMMARY OF 24 HOUR FITNESS' OPPOSITION .......................................................... 1

II.     STATEMENT OF FACTS ...................................................................................................... 2

     A.    24 Hour Fitness and Its Use of Its APEX Trademarks ........................................... 2

     B.    Defendants' Unity of Interest in their APEX Trademarks...................................... 3

          1.    Apex Stores' Internet Business and Ownership and Licensing of Defendants' APEX Trademarks.................................................................... 3

          2.    Apex Stores Transfers Its Interests in Defendants' APEX Marks to Apex, LLC ................................................................................................... 4

          3.    Apex at Home Does Not Contest Personal Jurisdiction and Licenses Rights to Defendants' APEX Trademarks .................................................. 4

     C.    The Unity of Control, Management and Ownership of Apex, LLC, Apex at Home, LLC and Apex Stores, LLC ........................................................................ 5

     D.    Chronology of Defendants' Cancellation Action, Settlement Demand, and Suit Against 24 Hour Fitness in Rhode Island ........................................................ 5

III.    ARGUMENT ........................................................................................................................... 7

     A.    Apex Stores and Apex, LLC Are Subject to Personal Jurisdiction in this Forum ....................................................................................................................... 7

          1.    Apex, LLC and Apex Stores Purposefully Directed Their Activities at California Through Their Control and Policing of the APEX Marks at Issue in this Case ............................................................................... 8

               a.    As Owners of the Defendants' APEX Marks, Apex Stores and Apex, LLC Are Subject to the Jurisdiction of this Court......... 9

               b.    Defendants' Common Management, Ownership and Unity of Interest with Regard to the APEX Marks Subject All Three to the Jurisdiction of this Court.......................................... 10

               c.    Apex's Cancellation Action Against 24 Hour Fitness' as Well as Their Demand to 24 Hour Fitness Satisfies the "Effects" Test for Purposeful Direction ....................................... 12

               d.    Apex Stores' Registration of the Apexhealthandfitness.com Domain Name Constitutes "Purposeful Direction" of Its Activities Toward 24 Hour Fitness and this Forum ...................... 13

          2.    24 Hour Fitness' Claims Arise out of Or Relate to the Forum-Related Activities of Apex, LLC and Apex Stores .................................. 14

          3.    The Exercise of Personal Jurisdiction Is Reasonable Given that Both Apex, LLC and Apex Stores Are Present in this Suit Based upon Identical Claims and Are Represented by the Same Counsel ......... 15

     B.    Authority for Declaratory Judgment Jurisdiction ................................................. 16

          1.    An Actual Controversy Exists Regarding 24 Hour Fitness' Use of the APEX Marks. ...................................................................................... 17

          2.    The Exercise of Declaratory Judgment Jurisdiction Is Proper................. 19

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
PALO ALTO

i

**24 HOUR FITNESS' OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS**

**TABLE OF CONTENTS**
(continued)

Page

3. Because It Is the First-Filed Action, and No Equitable Exception Applies, this Court Should Retain Jurisdiction over this Dispute............ 19

    a. 24 Hour Fitness' Declaratory Filing Was Not Made in "Bad Faith"........................................................................................... 20

    b. Contrary to Defendants' Assertion, 24 Hour Fitness' Complaint Was Not Filed on an Anticipatory Basis.................... 21

    c. California is a Convenient Forum for Adjudication of this Dispute ...................................................................................... 22

IV. CONCLUSION ............................................................................................. 23

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
PALO ALTO

ii

**24 HOUR FITNESS' OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS**

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Anita's New Mexico Style Mexican Food, Inc., v. Anita's Mexican Foods Corporation,*
201 F.3d 314 (4th Cir. 2000)........................................................................... 9, 10

*Apex, LLC and Apex at Home, LLC v. 24 Hour Fitness USA, Inc.,*
U.S.D.C., District of Rhode Island, No. 08-cv-00169 ........................................ 2

*Bancroft & Masters, Inc. v. Augusta Nat'l Inc.,*
223 F.3d 1082 (9th Cir. 2000)....................................................................... 12, 15

*Beacon Mutual Ins. Co. v. OneBeacon Ins. Group,*
376 F.3d 8 (1st Cir. 2004) ................................................................................... 16

*Biogen, Inc. v. Schering AG,*
954 F. Supp. 391 (D. Mass. 1996) ...................................................................... 21

*Calder v. Jones,*
465 U.S. 783........................................................................................... 7, 12, 13

*Chesebrough-Ponds, Inc. v. Faberge, Inc,*
666 F.2d 393 (9th Cir. 1982).......................................................................... 17, 18

*Citigroup Inc. v. City Holding Co.,*
97 F.Supp.2d 549 (S.D.N.Y. 2000).................................................................. 9, 10

*Concat LP v. Unilever, PLC,*
350 F. Supp. 2d 796 (N.D. Cal. 2004) ................................................................ 10

*Dainippon Screen Mfg. Co., Ltd. v. CFMT, Inc.,*
142 F.3d 1266 (Fed. Cir. 1998)........................................................................... 10

*Decker Coal Co. v. Commonwealth Edison Co.,*
805 F.2d 834 (9th Cir. 1986).............................................................................. 23

*Dudnikov v. Chalk & Vermillion Fine Arts, Inc.,*
514 F.3d 1063 (10th Cir. 2008)........................................................................... 12

*Genentech v. Eli Lilly & Co.,*
990 F.2d 931 (Fed. Cir. 1993)............................................................................. 19

*Government Employees Ins. Co. v. Dizol,*
133 F.3d 1220 (9th Cir. 1998)............................................................................. 19

*Guthy-Renker Fitness, LLC v. Icon Health & Fitness,*
179 F.R.D. 264 (C.D. Cal. 1998) ............................................................ 20, 21, 22

*Lake v. Lake,*
817 F.2d 1416 (9th Cir. 1987)............................................................................. 14

*Medimmune, Inc. v. Genentech, Inc.,*
549 U.S. 118 S. Ct. 764, 166 L. Ed. 2d. 604 (2007) .............................. 16, 17, 18

*Monolithic Power Systems, Inc. v. O2 Micro Int'l Ltd.,*
2007 WL 2318924, *3 (N.D. Cal. 2007) ............................................................ 17

*Panavision Int'l, L.P. v. Toeppen,*
141 F.3d 1316 (9th Cir. 1998)........................................................................ 7, 13

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
PALO ALTO

iii

**24 HOUR FITNESS' OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS**

**TABLE OF AUTHORITIES**
(continued)

Page

*SanDisk Corp. v. STMicroelectronics, Inc.*,
    480 F.3d 1372 (Fed. Cir. 2007) ........................................................................ 17, 19

*Secular Organizations for Sobriety, Inv. v. Ullrich*,
    213 F.3d 1125 (9th Cir. 2000) ................................................................................. 9

*Solar Gear Inc. v. Sunglass Hut Int'l, Inc.*,
    32 U.S.P.Q. 2d 1355 (N.D. Cal. 1994) ................................................................ 9, 10

*Sony Computer Entertainment America, Inc. v. America Medical Response, Inc.*,
    2007 WL 781969, *6 (N.D. Cal 2007) ................................................................. 19, 21

*Ward v. Follett Corp.*,
    158 F.R.D. 645 (N.D. Cal. 1994) ........................................................................ 19, 21

*Windsurfing Int'l Inc. v. AMF Inc.*,
    828 F.2d 755 (Fed. Cir. 1987) ................................................................................ 17

*Yahoo! Inc. v. La Ligue Contre Le Racisme et L'Antisemitisme*,
    433 F.3d 1199 (9th Cir. 2006) ........................................................................ passim

*Z-Line Designs, Inc. v. Bell'O International, LLC*,
    218 F.R.D. 663 (N.D. Cal. 2003) (MTD, pg. 24) ...................................................... 22

**STATUTES**

15 U.S.C. § 1051(d) .......................................................................................... 9

15 U.S.C. § 1055 ............................................................................................. 9

15 U.S.C. § 1127 .......................................................................................... 9, 10

28 U.S.C. § 1367(a) ......................................................................................... 19

28 U.S.C. § 1406(a) .......................................................................................... 7

28 U.S.C. § 2201(a) ......................................................................................... 16

Lanham Act, 15 U.S.C. § 1052(d), Section 2(d) ............................................................ 6

**OTHER AUTHORITIES**

3 J. McCarthy, *McCarthy on Trademarks & Unfair Competition*, § 18:48 ................ 9, 10, 11, 16

**RULES AND REGULATIONS**

Fed. R. Civ. Proc. 13(a) ..................................................................................... 16

Fed. R. Civ. Proc. Rule 4(m) ............................................................................... 21

Rule 12(b)(3) .................................................................................................. 7

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
PALO ALTO

iv

**24 HOUR FITNESS' OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS**

1

## I.     SUMMARY OF 24 HOUR FITNESS' OPPOSITION

In November 2007, after receiving refusals from the U.S. Patent and Trademark Office ("PTO") to register new trademark applications for several APEX marks, Defendant Apex Stores, LLC ("Apex Stores") initiated a set of cancellation and opposition proceedings against a number of owners of federally-registered APEX trademarks that had been cited against Apex Stores' trademark applications.  Without any prior communication, Apex Stores filed with the PTO and sent to Plaintiff 24 Hour Fitness USA, Inc. ("24 Hour Fitness" or "Plaintiff") one such Petition for Cancellation, which alleged Apex Stores' long use of several "APEX" marks and a resulting likelihood of confusion and trademark dilution.  24 Hour Fitness and Apex Stores attempted settlement discussions, which culminated in a letter from Apex Stores stating that it believed there was a "great likelihood of confusion" with respect to 24 Hour Fitness' APEX marks, and that Apex Stores wanted to "protect its rights."  24 Hour Fitness filed the instant action, and continued to attempt to negotiate with Apex Stores.  Shortly thereafter, as part of a corporate "shell game," Apex Stores assigned all of its trademark rights to Apex, LLC, and several days later, Apex, LLC and Apex at Home, LLC ("Apex at Home") filed a trademark infringement suit in Rhode Island District Court involving the identical APEX marks as the suit now before this Court.[1]

Apex at Home does not contest that it is subject to personal jurisdiction in this Court. However, its affiliates, Apex, LLC and Apex Stores, argue that it is unreasonable to exercise jurisdiction over them, in complete disregard of these affiliates' ownership and licensing of the APEX trademarks at issue, the complete overlap in management of all three entities, and Apex Stores' and Apex, LLC's initiation of intentional acts directed at 24 Hour Fitness.  Given that these forum contacts are directly related to 24 Hour Fitness' claims in this Action, and the lack of any burden or other factor militating against jurisdiction over these parties, it is clear that all three Apex entities are property subject to the jurisdiction of this Court.

Defendants also misstate the facts and the law in attempting to convince this Court that there was no case or controversy at the time the action was filed, and therefore subject matter

---

[1] Apex Stores, Apex, LLC, and Apex at Home are hereafter referred to collectively as "Apex," "Defendants," or the "Apex Defendants."

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
PALO ALTO

1

**24 HOUR FITNESS' OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS**

1 jurisdiction is not properly exercised over this action.  Contrary to Defendants' assertion, an

2 actual controversy does not require that they must be found to have made an *express* threat to sue.

3 Shortly before this suit was filed, Apex Stores made an implicit but clear threat to sue, putting 24

4 Hour Fitness on notice that the matter could be resolved only if 24 Hour Fitness immediately

5 relinquished or "phased out" its APEX brand, with all of its accumulated goodwill established

6 over a fourteen (14) year period of continuous use and incontestable trademark rights, and stated

7 that if 24 Hour Fitness were unwilling to do so (which it clearly was not), Apex Stores would act

8 "to protect its rights."

9     Furthermore, the Court may consider Defendants' actions since the filing of this lawsuit,

10 including that they filed suit against 24 Hour Fitness in their home state of Rhode Island several

11 weeks after this action was filed: *Apex, LLC and Apex at Home, LLC v. 24 Hour Fitness USA,*

12 *Inc*., U.S.D.C., District of Rhode Island, No. 08-cv-00169 (the "Rhode Island Action").  The

13 Rhode Island Action amply demonstrates that an actual controversy existed between the parties.

14 Thus, despite Defendants' efforts to portray 24 Hour Fitness as an overly aggressive litigant that

15 lulled it into complacency, the parties' dealings prior to the filing of this Action clearly establish

16 that 24 Hour Fitness acted reasonably and appropriately to protect its interests in filing this action,

17 and subject matter jurisdiction is properly vested in this Court.

18 **II.    STATEMENT OF FACTS**

19     **A.    24 Hour Fitness and Its Use of Its APEX Trademarks.**

20     24 Hour Fitness is a premier chain of health and fitness clubs.  (First Amended Complaint

21 ("Complaint"), ¶ 5, ¶ 8.)  Founded in 1983, its mission is to enhance people's lifestyles through

22 fitness and regular exercise.  (Id.).  24 Hour Fitness has a national presence through nearly 400

23 club locations in the United states, but approximately 10,000 of its employees as well as its senior

24 management are located in California.  (Griffin Decl. ¶¶ 4-6).[2]  Through its Apex Fitness Group

25 division, 24 Hour Fitness also provides cutting-edge integrated fitness and nutrition programs and

26 products under distributorships offered to health and fitness clubs throughout the United States.

27

28 ――――――――――――――
[2] "Griffin Decl." refers to the Declaration of Kimberly Griffin, filed herewith in support of 24 Hour Fitness'
Opposition to Defendants' Motion to Dismiss.

**24 HOUR FITNESS' OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS**

1    (Complaint, ¶ 9.)  24 Hour Fitness has offered its goods and services in the health and fitness field

2    under its APEX trademarks since at least as early as 1994, and has obtained at least 11 federal

3    registrations for marks incorporating the APEX term.  (Id.).  ("Hereinafter, "Plaintiff's APEX

4    Trademarks".)  Further, 24 Hour Fitness' Apex Fitness Group has provided its goods and services

5    at the internet domain address <www.apexfitness.com> since approximately October 2000.

6    (Griffin Decl. ¶ 7).

7    **B.    Defendants' Unity of Interest in their APEX Trademarks**

8    **1.    Apex Stores' Internet Business and Ownership and Licensing of
         Defendants' APEX Trademarks.**

9

10    Though it contests this Court's exercise of personal jurisdiction over it, the undisputed

11    facts establish that Apex Stores owned and licensed the APEX trademarks at issue in this case at

12    the time this action was filed.  At the time of its founding in June 1999, Apex Stores, LLC ("Apex

13    Stores") operated the internet retail business now located at the domain addresses

14    <www.apexstores.com> and <www.apexathome.com> (the "Apex Internet Business").  (Gates

15    Decl. ¶¶ 2, 4).[3] In addition, from June 1999 until May 2008, Apex Stores owned all of the U.S.

16    Patent and Trademark Office ("PTO") filings that are the subject of this action.  (Id. ¶ 5).  Around

17    July 2001, Apex Stores transferred the Apex Internet Business to Apex at Home, while retaining

18    ownership of Defendants' APEX trademark registrations.  (Id., ¶ 4, 5).  After July 2001, Apex

19    Stores' primary purpose became the ownership and maintenance of the APEX trademarks that are

20    the subject of this dispute, and it licensed the APEX marks to others (including Apex at Home).

21    (Id.).  In its filings regarding Defendants' APEX Marks with the PTO, Apex Stores relied on use

22    of the trademarks by its "related companies" and/or its "licensees" for affidavits of use required

23    for both filing and maintaining the federally registered rights in the APEX marks.  (Anderson

24    Decl. ¶¶ 2-9, Exh's. A-H).[4]

25    In addition to Defendants' APEX trademark owner and licensor, Apex Stores has also

26    been, and continues to be, the registrant for the domain names <www.apexstores.com> and

27    [3] "Gates Decl." refers to the Declaration of Andrew A. Gates, filed in Support of Defendants' Motion to Dismiss.

28    [4] "Anderson Decl." refers to the Declaration of Britt L. Anderson, filed herewith in Support of Plaintiff's Opposition
      to Motion to Dismiss.

Manatt, Phelps &
Phillips, LLP
Attorneys At Law
Palo Alto

3    **24 HOUR FITNESS' OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS**

<apexathome.com> used in the Apex Internet Business. (Gates Decl. ¶ 5; Anderson Decl. ¶ 10, Exh. I). Apex Stores licenses these domain names to Apex at Home. (Gates Decl. ¶ 5). In addition, around June 2008, Apex Stores registered the domain name <www.apexhealthandfitness.com>. (Anderson Decl. ¶ 11, Exh. J).

### 2.    Apex Stores Transfers Its Interests in Defendants' APEX Marks to Apex, LLC.

Though it contests this Court's exercise of personal jurisdiction, Apex, LLC does not contest that it presently owns and licenses the APEX trademarks that are at issue in this action. Around April 30, 2008, 33 days after this Action was filed, and five days before Apex, LLC and Apex at Home filed the Rhode Island Action, Apex Stores transferred all of Defendants' APEX trademarks, including the federal APEX trademark registrations and common law rights to Apex, LLC. (Ottaviani Decl.,[5] ¶¶ 15, 16; Gates Decl. ¶ 17). Because Apex, LLC was formed for the sole purpose of owning various trademarks, it does not use the APEX trademarks itself. (Gates Decl. ¶ 17). Moreover, the federal trademark registrations for the marks APEX STORES and APEX ONLINE, (U.S. Registration Nos. 2,443,933 and 2,562,812) owned by Apex, LLC, were recently renewed based upon specimens of use obtained from the Apex Internet Business website operated by Apex at Home. (Anderson Decl. ¶ 6-7, Exh. E-F (see specimen pages)).

### 3.    Apex at Home Does Not Contest Personal Jurisdiction and Licenses Rights to Defendants' APEX Trademarks.

Apex at Home was formed in June 2001, and has owned and operated Defendants' Internet Retail Business since July 2001. (Gates Decl. ¶ 4). Apex at Home does not own the federal or common law trademarks that are the subject of this lawsuit. (Gates Decl. ¶ 17). Instead, Apex at Home licenses its trademarks – formerly from Apex Stores, and now from Apex, LLC – and it continues to license the domain names it uses for its internet retail business from Apex Stores. (Gates Decl. ¶ 4). Apex at Home uses many of Defendants' APEX trademarks on the Internet retail business website, including, but not limited to, APEX, APEX STORES, and APEX ONLINE. (Anderson Decl. ¶ 12, Exh. K).

---

[5] "Ottaviani Decl" refers to the Declaration of John E. Ottaviani, filed in Support of Defendants' Motion to Dismiss.

Manatt, Phelps &
Phillips, LLP
Attorneys At Law
Palo Alto

4

24 HOUR FITNESS' OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS

**C.    The Unity of Control, Management and Ownership of Apex, LLC, Apex at Home, LLC and Apex Stores, LLC.**

Apex Stores, Apex, LLC and Apex at Home are affiliated Rhode Island limited liability companies, each of which has the same principal place of business.  (Gates Decl., ¶¶ 2, 14, 25).  The Limited Liability Company Manager of each of these entities is Andrew Gates.  (Gates Decl., ¶¶ 3, 16; Anderson Decl., ¶ 13, Exh. L).  Limited liability company filings for each of Apex Stores, Apex, LLC and Apex at Home provide that that the entity is to be managed by its Manager.  (*Id*.).  Andrew Gates is the sole owner of Apex Stores and Apex at Home.  (Gates Decl. ¶¶ 3, 26).  Apex, LLC is owned by Zelby Holdings, Inc., a Rhode Island corporation of which Andrew A Gates is President.  (Gates Decl. ¶ 15; Anderson Decl., ¶ 14, Exh. M).  All three entities, plus Zelby Holdings, Inc., have as registered agent in Rhode Island the law firm of Edward Angell Palmer & Dodge LLP, (*Id*., ¶¶ 13-14, Exh's. L-M), which is also Defendants' law firm in this case.

On Defendants' Internet retail website, the entity providing the services is repeatedly identified as "Apexstores.com" or simply as "Apex."  (Anderson Decl., ¶ 12, Exh K).  The homepage of the website states that "Apex Stores® is the online shopping site of Apex®, the only site with everything for you, your home and your car on one site."  (*Id*.).  In addition, it states: "Apex® is a New England-based retailer delivering the ultimate in brand name selection and unbeatable customer service."  (*Id*.).

**D.    Chronology of Defendants' Cancellation Action, Settlement Demand, and Suit Against 24 Hour Fitness in Rhode Island.**

In 2006, Apex Stores filed a federal trademark application with the PTO for the mark APEX COMPANIES that was refused by the Trademark Examining Attorney in part due to 24 Hour Fitness' federal registrations for several APEX marks.  (Ottaviani Decl. ¶ 3-4).  On or about November 1, 2007, Apex Stores sent 24 Hour Fitness a letter enclosing a Petition for Cancellation that had been filed by Apex Stores that same day with the PTO's Trademark Trial and Appeal Board ("TTAB"). (Complaint, ¶ 16, Exh. 3).[6] By its Petition for Cancellation, Apex Stores sought

---

[6] Apex's Consolidated Petition for Cancellation, filed November 1, 2007 with the TTAB, is found at Exhibit 3 of

Manatt, Phelps &
Phillips, LLP
Attorneys At Law
Palo Alto

5

**24 HOUR FITNESS' OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS**

1    to cancel in whole or in part the 24 Hour Fitness APEX Marks under U.S. Registration Nos.

2    2,701,627, 2,703,428 and 2,936,205 based upon its claim that these marks were confusingly

3    similar to one or more of Apex's Marks in violation of Section 2(d) of the Lanham Act, 15 U.S.C.

4    § 1052(d)  and that 24 Hour Fitness' continued use of its APEX marks diluted the distinctive

5    quality of Defendants' APEX marks (the "Cancellation Action"). (Complaint, Exh. 3.)  The

6    Cancellation Action refers to the petitioner as "Apex" and further alleges that Apex Stores used

7    the word "APEX" in connection with an "online retail" business.  (Complaint, Exh. 3

8    (introduction)).  On December 12, 2007, 24 Hour Fitness answered Apex Stores' Petition for

9    Cancellation by denying Apex Stores' relevant allegations regarding likelihood of confusion and

10   dilution and asserting affirmative defenses. (Complaint, ¶ 17).  On or around July 8, 2008, Apex

11   Stores filed a Motion to Suspend its Cancellation Action pending the outcome of the Rhode

12   Island Action, which motion was granted on August 6, 2008.  (Anderson Decl. ¶ 15, Exh. N).

13   Signifying its recognition that both current and former owners of a trademark at issue in a

14   proceeding are necessary parties to a Cancellation Action, the TTAB joined Apex, LLC with

15   Apex Stores as a plaintiff, rather than dismiss former trademark owner Apex Stores from the case.

16   (*Id.*).  Since November 1, 2007, Apex Stores and/or Apex, LLC have filed approximately 12

17   cancellation or opposition proceedings in the TTAB against various third parties regarding

18   "APEX" marks.  (Anderson Decl. ¶¶ 15-17, Exh's. O-P).

19         Following Apex's November 1 letter providing notice of the Cancellation Action, counsel

20   for 24 Hour Fitness and Apex conferred regarding the potential for settlement.  The parties

21   discussed using a Letter of Consent to enable Apex to overcome the PTO's refusal of its

22   registration. (Complaint, ¶ 18; Ottaviani Decl. ¶ 8).  However, around March 10, 2008,

23   Defendants' counsel sent 24 Hour Fitness a letter stating that 24 Hour Fitness' continued use of

24   its APEX and APEX FITNESS marks resulted in "a great likelihood of confusion," and that Apex

25   was "unwilling to compromise" and wanted to "protect its rights." (Complaint, ¶ 19, Exh. 4).

26   Apex Stores also rejected the Letter of Consent previously discussed, and for the first time

27   demanded that 24 Hour Fitness "phase out" use of its APEX marks.  (*Id.*).  On March 27, 2008,

28
Plaintiff's First Amended Complaint.

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
PALO ALTO

6

24 HOUR FITNESS' OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS

1    24 Hour Fitness filed this Action.  (*Id.*, ¶ 20).  Before 24 Hour Fitness served the its complaint,

2    Plaintiff attempted to reinitiate settlement discussions by sending a letter on April 11, 2008

3    proposing terms for settlement, and stating that it viewed the Letter of Consent as the proper basis

4    for resolving the matter.  (*Id.*, ¶ 21, Exh. 5).

5        Defendants did not respond substantively to 24 Hour Fitness' April 11, 2008 letter, even

6    after subsequent email follow up by 24 Hour Fitness' counsel. (Ottaviani Decl. ¶ 12). On May 5,

7    2008, when 24 Hour Fitness finally reached Defendants' counsel, he provided no insights on his

8    clients' response to 24 Hour Fitness' April 11 letter.  (*Id.* ¶ 13-14).  On the same day, Apex, LLC

9    and Apex at Home filed the Rhode Island Action against 24 Hour Fitness. (*Id.* ¶ 22).  That action

10   has now been tentatively stayed pending this Court's resolution of Apex's Motion to Dismiss.[7]

11   **III.   ARGUMENT**

12       **A.     Apex Stores and Apex, LLC Are Subject to Personal Jurisdiction in this
13       Forum.**

14       Specific jurisdiction is analyzed using a three-prong test: (1) the non-resident defendant

15   must purposefully direct its activities or consummate some transaction with the forum or a

16   resident thereof; or perform some act by which it purposefully avails itself of the privilege of

17   conducting activities in the forum, thereby invoking the benefits and protections of its laws; (2)

18   the claim must be one which arises out of or results from the defendant's forum-related activities;

19   and (3) the exercise of jurisdiction must be reasonable.  *See Yahoo! Inc. v. La Ligue Contre Le*

20   *Racisme et L'Antisemitisme*, 433 F.3d 1199, 1205 (9th Cir. 2006).  In tort cases, jurisdiction may

21   attach if the defendant's conduct is aimed at or has an effect in the forum state.  *Panavision Int'l,*

22   *L.P. v. Toeppen*, 141 F.3d 1316, 1322 (9th Cir. 1998) (citing *Calder v. Jones*, 465 U.S. 783

23   (establishing an "effects test" for intentional action aimed at a forum state).  Calder imposes three

24   requirements: "the defendant allegedly [must] have (1) committed an intentional act; (2)

25   expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be

26

27   _____

[7] On August 15, 2008, based upon 24 Hour Fitness' Motion to Dismiss or Stay Proceedings Pursuant to Rule 12(b)(3) and 28 U.S.C. § 1406(a) ("Motion to Stay"), Magistrate Judge Martin for the District of Rhode Island recommended that the Motion to Stay be granted to the extent it seeks to stay the Rhode Island action pending decision by this Court of Defendant's Motion to Dismiss.  (Anderson Decl. ¶ 18, Exh. Q).

28

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
PALO ALTO

7

**24 HOUR FITNESS' OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS**

1   suffered in the forum state." *See Yahoo!,* 433 F.3d at 1207.  The Court must evaluate all of a

2   defendant's contacts with the forum state, whether or not those contacts involve wrongful activity

3   by the defendant.  *See id*. at 1208.

4          Apex at Home, which licenses and uses the APEX trademarks and domain names under

5   which it operates the Apex Internet Business, does not contest the reasonableness of this Court's

6   personal jurisdiction.  Nonetheless, Apex, LLC and Apex Stores argue that it is unreasonable to

7   exercise jurisdiction over them (*see* MTD 7:2-4), in complete disregard of these affiliates'

8   ownership and licensing of the very APEX trademarks at issue and their initiation of several

9   intentional acts directed at 24 Hour Fitness.  As the forum contacts of Apex, LLC and Apex

10  Stores are directly related to 24 Hour Fitness' claims in this action, there is no question that both

11  are subject to the specific jurisdiction of this Court.

12          **1.      Apex, LLC and Apex Stores Purposefully Directed Their Activities at**
                    **California Through Their Control and Policing of the APEX Marks at**
13                  **Issue in this Case.**

14          In this case, there are four sets of contacts by Apex, LLC and Apex Stores establishing

15  that they purposefully directed their activities toward 24 Hour Fitness and this forum.  First,

16  Apex, LLC and Apex Stores own and control the APEX trademarks on which this action is based,

17  and license them to Apex at Home which uses the APEX marks in Defendants' internet retail

18  business.  Second, as would be expected for entities that are owned, managed, and controlled by a

19  single individual, Apex, LLC, Apex Stores, and Apex at Home, claim a unity of interest in regard

20  to their APEX marks and all Apex entities use the marks on a broad basis in connection with the

21  Apex Internet Business.  Third, Apex Stores and Apex, LLC, which succeeded to all APEX

22  trademark rights by assignment from Apex Stores, filed a Petition for Cancellation regarding 24

23  Hour Fitness' trademark registrations and sent a cease and desist letter demanding that 24 Hour

24  Fitness "phase out" its use of the APEX name.  Fourth, Apex Stores maintains the domain name

25  registrations for apexathome.com and apexstores.com, used in the Apex Internet Business, and

26  during the course of this dispute has registered the domain name apexhealthandfitness.com,

27  despite 24 Hour Fitness' ownership of the virtually identical domain name,

28  www.apexfitness.com.

Manatt, Phelps &
Phillips, LLP
Attorneys At Law
Palo Alto

8

**24 HOUR FITNESS' OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS**

1

2

    **a.  As Owners of the Defendants' APEX Marks, Apex Stores and Apex, LLC Are Subject to the Jurisdiction of this Court.**

3

   A licensor is required to exercise quality control over its licensee or a "related company"

4

using the mark.  *See* 3 J. McCarthy, *McCarthy on Trademarks & Unfair Competition*

5

("*McCarthy*"), § 18:48 (effect of "naked" licensing).  A "related company" is any party whose

6

use of a mark is controlled by the owner of the mark with respect to the nature and quality of

7

good or services on or in connection with which the mark is being used.  *See* 15 U.S.C. § 1127

8

(defining "related company"); *Secular Organizations for Sobriety, Inv. v. Ullrich*, 213 F.3d 1125,

9

1131 (9th Cir. 2000).

10

   Numerous courts have found personal jurisdiction over defendant-licensors appropriate,

11

where a licensee commits infringing activities within the state, due to the quality control

12

requirement imposed on licensors.  *See Anita's New Mexico Style Mexican Food, Inc., v. Anita's*

13

*Mexican Foods Corporation*, 201 F.3d 314 (4th Cir. 2000) (jurisdiction in Virginia over

14

California licensor whose licensee used marks in Virginia, based on quality-control requirement);

15

*Solar Gear Inc. v. Sunglass Hut Int'l, Inc.*, 32 U.S.P.Q. 2d 1355 (N.D. Cal. 1994) (defendant

16

holding company's argument that it simply owned trademarks unavailing; trademark used in

17

California by a wholly owned subsidiary supported purposeful availment); *Citigroup Inc. v. City*

18

*Holding Co*., 97 F.Supp.2d 549 (S.D.N.Y. 2000) (West Virginia licensor of trademarks subject to

19

personal jurisdiction in action under New York long-arm statute).

20

   Because the licensee in this case – Apex at Home – does not contest personal jurisdiction

21

in this forum, licensors Apex Stores and Apex, LLC are equally subject to jurisdiction here.  Until

22

May 2008, Apex Stores owned the federal, state and common law right in and to Defendants'

23

APEX marks.  (Gates Decl. ¶ 5[8]).  Apex Stores claims that it did not use Defendants' APEX

24

marks, including federally registered marks, after June 2001. (Gates Decl. ¶ 5).  In fact, every

25

filing by Apex Stores and Apex, LLC of a declaration of use with the PTO between 2001 and the

26

[8] The Gates Declaration states that Apex, LLC and Apex at Home both own the federally-registered APEX

27

trademarks.  (Gates Decl. ¶ 32.)  However, an owner of a federal registration is the named applicant or registrant of the pending application or registration. 15 U.S.C. § 1051(d), 1055.  Apex at Home is not registrant or applicant, and

28

therefore is not the <u>owner</u> of any of Defendants' federal trademark registrations.

**24 HOUR FITNESS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

1    present claims and relies on use by a "related company" and/or "licensee" – i.e., Apex at Home.

2    (Anderson Decl., ¶¶ 2-9, Exh. A-H).  As a federal trademark registration is only valid if the owner

3    *uses* the trademark, whether by using the mark itself or through a related company, Apex Stores

4    and Apex, LLC relied upon their licensee's use (Apex at Home) to establish the basis for their

5    trademark rights.  *See McCarthy*, § 18:51-52.

6          Moreover, because Defendants admit that Apex Stores and by succession Apex, LLC

7    license the APEX marks to Apex operating entities, including Apex at Home, (Gates Decl. ¶ 5),

8    Apex Stores and Apex, LLC must exercise control over the nature and quality of the goods and

9    services offered by their "licensee" or any "related company," including Apex at Home.  15

10   U.S.C. § 1127 (defining "related company"); *McCarthy*, § 18:48 (naked licensing results in

11   trademark abandonment).  These three entities playing their shell games cannot have it both ways:

12   either they exercise quality control over Apex at Home's use of the marks or they do not.  If they

13   do, they are subject to the jurisdiction of this Court.  *See, e.g., Anita's New Mexico Style Mexican*

14   *Food, Inc., v. Anita's Mexican Foods Corporation*, *supra*, 201 F.3d at 314; *Solar Gear Inc. v.*

15   *Sunglass Hut Int'l, Inc.*, *supra*, 32 U.S.P.Q. 2d at 1355; *Citigroup Inc. v. City Holding Co*., *supra*,

16   97 F.Supp.2d at 549.  If they do not exercise control, then Apex at Home's use of the marks does

17   not inure to the benefit of Apex Stores and Apex, LLC for purposes of maintaining their federal

18   trademark registrations, and those registrations are invalid, as a trademark license lacking quality

19   control is a "naked license" causing the licensor to lose all rights in the mark.  *McCarthy*, § 18:48.

20              **b.    Defendants' Common Management, Ownership and Unity of**
                 **Interest with Regard to the APEX Marks Subject All Three to**
21               **the Jurisdiction of this Court.**

22         Courts have found that extreme unity of control among entities is dispositive of personal

23   jurisdiction over defendants, particularly where as here, the defendants contesting jurisdiction are

24   also licensors of the intellectual property at issue.  *See Dainippon Screen Mfg. Co., Ltd. v. CFMT,*

25   *Inc*., 142 F.3d 1266 (Fed. Cir. 1998) (in patent case jurisdiction over non-resident parent

26   corporation was proper as parent licensed intellectual property to subsidiary, parent and

27   subsidiary shared common management, and individuals active in management of both

28   companies held power to instigate litigation); *Concat LP v. Unilever, PLC*, 350 F. Supp. 2d 796,

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
PALO ALTO

10          **24 HOUR FITNESS' OPPOSITION TO**
            **DEFENDANTS' MOTION TO DISMISS**

1    812 (N.D. Cal. 2004) (plaintiff satisfied prima facie case for personal jurisdiction as defendant

2    foreign parent corporation's own literature explained that the companies within the group act as

3    single entity with a single management team, that they cooperate in all areas, and they exchange

4    all relevant business information).

5          Apex Stores, Apex, LLC and Apex at Home are more than "affiliated companies."[9]  They

6    are managed, owned and controlled by a single individual, Andrew Gates, and all Defendants

7    have the same principal place of business.  (Gates Decl. ¶¶ 2, 14, 25).  The Limited Liability

8    Company Manager for each of these entities is Andrew Gates.  (Gates Decl. ¶¶ 3, 16; Anderson

9    Decl. ¶ 13, Exh. L).  Irrespective of any attempt to disavow control by Andrew Gates over all

10   three entities,[10] the limited liability company filings for each of Apex Stores, Apex, LLC and

11   Apex at Home provide that each entity is managed by its Manager.  (Id.).  Moreover, Defendants

12   admit that Andrew Gates is the sole owner of Apex Stores and Apex at Home.  (Gates Decl. ¶¶ 3,

13   26).  Apex, LLC is owned by a Rhode Island corporation called Zelby Holdings, Inc., of which

14   Andrew A. Gates is President.  (Gates Decl. ¶ 15; Anderson Decl. ¶ 14, Exh. M).  All three

15   entities, plus Zelby Holdings, Inc., have as registered agent in Rhode Island the law firm of

16   Edward Angell Palmer & Dodge LLP, (Anderson Decl. ¶ 13-14, Exhs. L-M), which is also

17   Defendants' law firm in this case.

18         Moreover, in both the Rhode Island Action and the Cancellation Action, Defendants

19   allege they are one in the same, provide services jointly and have joint interests in regard to their

20   APEX trademarks.  For example, in the Cancellation Action, Apex Stores refers to itself as

21   "Apex," which is the identical reference used collectively for Apex, LLC and Apex at Home in

22   the Rhode Island Action.  (*Compare* Complaint, ¶ 17, Exh. 3 with Ottaviani Decl.¶ 16, Exh. H, pg

23

---

[9] All of the agency or alter ego cases cited by Defendants' at Pages 14-16 of their Motion to Dismiss are inapplicable: (1) they are not trademark cases; (2) none of these cases concern jurisdiction arising from ownership of trademarks as well as licensing and control of those trademarks at issue; (3) 24 Hour Fitness has not even pled alter ego allegations in its Amended Complaint, so any standard applicable to such pleading is completely off point.

[10] The Gates Declaration states that Mr. Gates is "not involved in the day-to-day management of the operations of Apex at Home."  (Gates Decl. ¶ 29.)  Mr. Gates states that he "manage[s] all business conducted by Apex Stores and Apex, LLC."  *Id.*  Whatever his daily responsibilities at Apex at Home, Mr. Gates has the right to exercise any control he wishes over Apex at Home due to his role as Manager.  Moreover, Apex Stores and Apex, LLC as trademark owners and licensors have <u>the right and ability to</u> and <u>must</u> exercise control over Apex at Home's use of the APEX marks to avoid loss of trademark rights.  *McCarthy*, § 18.48.

**24 HOUR FITNESS' OPPOSITION TO<br>DEFENDANTS' MOTION TO DISMISS**

2).  Furthermore, the services offered by "Apex" (Apex, LLC and Apex at Home) in the Apex

Rhode Island Action are alleged to be provided "throughout the United States." (Ottaviani Decl.¶

16, Exh. H, pgs. 3-4).  Moreover, although the Apex Entities are alleged by Andrew Gates to be

"separate entities operating independently of each other" (Gates Decl. ¶ 28), Apex, LLC and

Apex at Home contradict this statement in the Rhode Island Action by alleging that "Apex

[collectively] ... continue[s] to provide retail services," which "[o]ver the years, [it has] expanded

... to include ... online retail operations."  (Ottaviani Decl. ¶ 16, Exh. H, para. 8).  Moreover, the

Apex Entities are indistinguishable on Defendants' internet retail website, because the entity

plainly identified as running the website and accordingly using the APEX marks is simply

referred to as either "Apex" or "Apexstores.com." (Anderson Decl. ¶ 12, Exh. K).  Because of

this commonality of interest, all three Apex entities are subject to the jurisdiction of this Court.

c.    **Apex's Cancellation Action Against 24 Hour Fitness' as Well as Their Demand to 24 Hour Fitness Satisfies the "Effects" Test for Purposeful Direction.**

The Ninth Circuit and other Federal Courts of Appeal have found that cease and desist

letters in conjunction with the initiation of other proceedings against a plaintiff confer personal

jurisdiction over defendants.  *See, e.g., Yahoo!*, *supra,* 433 F.3d at 1211 (jurisdiction proper over

party who sent cease and desist letter, served a complaint filed in French court, and served interim

orders in the French suit); *Bancroft & Masters, Inc. v. Augusta Nat'l Inc.*, 223 F.3d 1082, 1087

(9th Cir. 2000) (jurisdiction proper over defendant who sent cease and desist letters, one of which

was also sent to Network Solutions, thereby triggering Network Solutions' dispute resolution

policy); *Dudnikov v. Chalk & Vermillion Fine Arts, Inc.*, 514 F.3d 1063, 1080 (10th Cir. 2008)

(defendant-copyright claimants "purposefully directed" activities at forum based upon cease and

desist letter to plaintiff as well as takedown notice sent to eBay regarding plaintiff's eBay

auctions).  These cases have reached their conclusions based upon application of the *Calder*

"effects" test, which requires (1) an intentional act, (2) expressly aimed at the forum state, (3)

causing harm that defendant knows is likely to be suffered in the forum state.  *Yahoo!*, *supra,* 433,

F.3d 1206.

1   While Apex, LLC and Apex Stores assert that their "only contacts concerning their

2   trademarks directed toward the State of California were letters and email communications

3   between their counsel and counsel for 24 Hour Fitness, in an effort to negotiate a potential

4   settlement agreement," (MTD 11:1-3), this statement ignores the fact that Apex Stores also filed

5   the Cancellation Action against 24 Hour Fitness' trademark registrations.  (Ottaviani Declaration,

6   ¶ 6).  The combination of the Cancellation Action and the cease and desist letter demanding that

7   24 Hour Fitness "phase out" use of its APEX marks establishes that Apex, LLC and Apex Stores

8   purposefully directed their activities at California.  Simply put, the filing of the Cancellation

9   Action, coupled with the brazen demand that 24 Hour Fitness phase out use of 24 Hour Fitness of

10  its APEX marks, by these Apex Stores was an "intentional act," "expressly aimed" at California,

11  which Apex Stores knew was "likely to cause harm" in California.  *Yahoo!*, *supra*, 433 F.3d at

12  1206.

13              **d.      Apex Stores' Registration of the Apexhealthandfitness.com
                          Domain Name Constitutes "Purposeful Direction" of Its
14                        Activities Toward 24 Hour Fitness and this Forum.**

15  Jurisdiction may attach if the defendant's conduct is aimed at or has an effect in the forum

16  state.  *See Panavision Int'l, L.P. v. Toeppen*, 141 F.3d 1316, 1322 (9th Cir. 1998) (citing *Calder v.*

17  *Jones*, 465 U.S. 783 (establishing an "effects test" for intentional action aimed at a forum state).

18  The purposeful availment prong of the jurisdiction analysis is satisfied where a defendant

19  registers a domain name comprised of plaintiff's trademark intending to cause harm to plaintiff in

20  California.  *See Panavision*, 141 F.3d at 1322-23 (Toeppen directed his activities toward the

21  California forum when he "register[ed] Panavision's trademarks as his domain names" which "he

22  knew it likely would, had the effect of injuring Panavision in California where Panavision had

23  principal place of business.")

24  On June 9, 2008, during the pendency of this suit, Apex Stores registered the domain

25  name <apexhealthandfitness.com> (Anderson Decl. ¶ 11, Exh.  J), despite the fact that 24 Hour

26  Fitness has used the domain name www.apexfitness.com in connection with its Apex Fitness

27  Group division since 2000. (Griffin Decl. ¶ 7).  Moreover, Apex Stores' newly registered domain

28  name incorporates the terms "APEX," and "FITNESS."  24 Hour Fitness owns four federal

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
PALO ALTO

13

**24 HOUR FITNESS' OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS**

1    trademark registrations incorporating both terms "APEX" and "FITNESS." (*See* Complaint ¶ 9).

2    However, Defendants own no such registrations. (*See* Complaint ¶ 10).

3        Apex Stores has simply incorporated the principal elements of 24 Hour Fitness' federally

4    registered trademarks into a highly similar domain name.  As 24 Hour Fitness has its principal

5    place of business in California, there is no question that Apex Stores' registration activity is

6    aimed directly at 24 Hour Fitness' "Apex Fitness" business in the health and fitness field (*see*

7    Complaint ¶ 9), and has the effect of injuring 24 Hour Fitness in California, thus supporting a

8    finding of personal jurisdiction as to Apex Stores.

9        Finally, it is worth noting that Apex at Home does not contest personal jurisdiction based

10   upon its Internet Retail Business.  As Apex Stores is now evidently engaged in the same business

11   by virtue of its ownership of the <apexhealthandfitness.com> domain name, it should be subject

12   to personal jurisdiction as well.

13              **2.    24 Hour Fitness' Claims Arise out of Or Relate to the Forum-Related
                       Activities of Apex, LLC and Apex Stores.**
14

15       In a specific jurisdiction inquiry, a court must consider the extent of the defendant's

16   contacts with the forum and the degree to which the plaintiff's suit is related to those contacts.

17   *Yahoo!*, *supra*, 433 F.3d at 1211.  A strong showing on one axis will permit a lesser showing on

18   another.  *Id*.  A single forum state contact can support jurisdiction if the cause of action arises out

19   of that particular purposeful contact of the defendant with the forum state.  *See Lake v. Lake*, 817

20   F.2d 1416, 1421 (9th Cir. 1987).

21       Here, Apex, LLC and Apex Stores have numerous contacts directly related to the APEX

22   trademarks over which 24 Hour Fitness has filed its declaratory judgment action.  In addition to

23   the common ownership, management and control shared by all three Apex entities, Defendants

24   license their APEX marks to and permit their use by Apex at Home as a "related company,"

25   thereby requiring them to control the quality of Apex at Home's use of the APEX marks.  (*See*

26   Section III.A.1.a *supra*).  Apex, LLC and Apex at Home (over which jurisdiction is not contested)

27   also admit the common interest among them in their APEX marks in their Rhode Island action.

28   (*See* Section III.A.1.b *supra*). Further, Apex Stores (and by succession Apex, LLC) initiated the

Manatt, Phelps &
Phillips, LLP
Attorneys At Law
Palo Alto

14

**24 HOUR FITNESS' OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS**

1    Cancellation Action against 24 Hour Fitness' trademark registrations, while directing a demand to

2    cease use by 24 Hour Fitness of its APEX trademarks. (*See* Section III.A.1.c *supra*).  Finally, in

3    an effort to harm 24 Hour Fitness, Apex Stores has recently registered a domain name,

4    <apexhealthandfitness.com>, which directly targets 24 Hour Fitness' trademark rights.  (*See*

5    Section III.A.1.d *supra*).

6         Because 24 Hour Fitness' declaratory judgment claims are based directly on Defendants'

7    assertion that 24 Hour Fitness' APEX marks are likely to cause confusion, and Defendants have

8    intentionally targeted 24 Hour Fitness in California through their activities with their APEX

9    marks, there is no question that 24 Hour Fitness' suit arises from and is directly related to

10   Defendants' forum contacts.

11   **3.    The Exercise of Personal Jurisdiction Is Reasonable Given that Both
              Apex, LLC and Apex Stores Are Present in this Suit Based upon
12            Identical Claims and Are Represented by the Same Counsel.**

13        The reasonableness determination requires the consideration of several specific factors:

14   (1) the extent of the defendant's purposeful interjection into the forum state, (2) the burden on the

15   defendant in defending in the forum, (3) the extent of the conflict with the sovereignty of the

16   defendant's state, (4) the forum state's interest in adjudicating the dispute, (5) the most efficient

17   judicial resolution of the controversy, (6) the importance of the forum to the plaintiff's interest in

18   convenient and effective relief, and (7) the existence of an alternative forum.  *See Bancroft &*

19   *Masters*, *supra*, 223 F.3d at 1088.

20        Regarding the first factor, Apex Stores' and Apex, LLC's purposeful interjection is

21   extensive: they control and license the APEX marks to Apex at Home, which does not contest

22   jurisdiction (see Section III.A.1.a *supra*); they share common interest and management with Apex

23   at Home (*see* Section III.A.1.b *supra*); they intentionally initiated the Cancellation Action while

24   demanding that 24 Hour Fitness cease use of its APEX marks (*see* Section IV.A.1.c); and, Apex

25   Stores has hostilely registered in a domain name during the pendency of this dispute (*see* Section

26   IV.A.1.d).  With respect to the second factor, there is little or no added burden on the defendants,

27   Apex, LLC and Apex Stores, as they are represented by same counsel as Apex at Home, and their

28   management and ownership completely overlap.

Manatt, Phelps &
Phillips, LLP
Attorneys At Law
Palo Alto

15

**24 HOUR FITNESS' OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS**

1    As for the third factor, conflict with the sovereignty of defendants' state, Defendants

2    mistakenly suggest that the state law claims in the Rhode Island Action make jurisdiction

3    unreasonable as those claims are not at issue in this Court.  (MTD, 13:19-24).  However, a single

4    likelihood of confusion standard governs all parties' federal and state law claims in both suits. *See*

5    *McCarthy*, § 23:1; *Beacon Mutual Ins. Co. v. OneBeacon Ins. Group*, 376 F.3d 8, 14-15 (1st Cir.

6    2004) (likelihood of confusion analysis also applies to Rhode Island common law claims).

7    Further, all of the claims asserted in the Rhode Island Action arise from the same transaction and

8    are therefore compulsory counterclaims in the California action.  *See* Fed R. Civ. Proc. 13(a).

9    Moreover, turning to the fourth through seventh factors, it is clear that the plaintiff's

10    forum, California, has the greatest interest in and can more efficiently adjudicate this dispute

11    relative to any other forum.  24 Hour Fitness is a resident of this forum, with its principal place of

12    business in San Ramon, California, and its management and control relative to these marks is

13    based in California. (Griffin Decl., ¶ 4-6).  Any adverse decision with regard to 24 Hour Fitness'

14    APEX trademark rights, and thus its well-established, successful Apex Fitness Group division,

15    will necessarily impact the State of California as well.  Finally, this action will conserve judicial

16    resources as all three Apex Defendants are already parties in this action.

17    **B.**    <u>**Authority for Declaratory Judgment Jurisdiction.**</u>

18    The Declaratory Judgment Act provides that "[i]n case of actual controversy within its

19    jurisdiction, … any court of the United States, upon filing of an appropriate pleading, may declare

20    the rights and other legal relations of any interested party seeking such declaration."  28 U.S.C. §

21    2201(a).  The Supreme Court recently instructed that all that is required for a justiciable

22    controversy is that:

23
24
25
26

> the dispute be definite and concrete, touching the legal relations of the parties
> having adverse legal interests; and that it be real and substantial and admit of
> specific relief through a decree of a conclusive character, as distinguished from an
> opinion advising what the law would be upon a hypothetical state of facts ….
> Basically, the question in each case is whether the facts alleged, under all the
> circumstances, show that there is a substantial controversy, between parties having
> adverse legal interests, of sufficient immediacy and reality to warrant the issuance
> of a declaratory judgment.

27
28

Manatt, Phelps &
Phillips, LLP
Attorneys At Law
Palo Alto

16

**24 HOUR FITNESS' OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS**

*Medimmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 S. Ct. 764, 771-72, 166 L. Ed. 2d. 604 (2007). Following *Medimmune*, various circuit courts have discarded their earlier "reasonable apprehension" requirement and adopted the Supreme Court's "all circumstances" test.[11] *See, e.g., SanDisk Corp. v. STMicroelectronics, Inc.*, 480 F.3d 1372, 1381 (Fed. Cir. 2007) ("Article III jurisdiction may be met where the patentee takes a position that puts the declaratory judgment plaintiff in the position of either pursuing arguably illegal behavior or abandoning that which he claims a right to do."); *Monolithic Power Systems, Inc. v. O2 Micro Int'l Ltd.*, 2007 WL 2318924, *3 (N.D. Cal. 2007); *see also Windsurfing Int'l Inc. v. AMF Inc.*, 828 F.2d 755, 757 (Fed. Cir. 1987) (declaratory judgment actions involving trademarks are analogous to those involving patents).

### 1.    An Actual Controversy Exists Regarding 24 Hour Fitness' Use of the APEX Marks.

In *SanDisk Corp. v. STMicroelectronics*, the Federal Circuit found that STMicroelectronics had presented its conclusions on infringement by SanDisk and asserted a right to a royalty based on the infringement. *SanDisk*, 480 F.3d at 1382. SanDisk on the other hand maintained that it could proceed in its conduct without payment of royalties to STMicroelectronics. *Id.* The Federal Circuit found that these facts "creat[ed] 'a substantial controversy, between parties having adverse legal interest, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.'" *Id.*

For an actual controversy, there is no requirement that the defendant be found to have made an express threat to sue; moreover, the court may consider Defendants' actions since the filing of this lawsuit. *See Chesebrough-Ponds, Inc. v. Faberge, Inc*, 666 F.2d 393 (9th Cir. 1982). In *Chesebrough-Ponds,* defendant demanded plaintiff withdraw a pending trademark application, and that if plaintiff did not comply, defendant would file an opposition proceeding. Although this letter did not threaten litigation, the court nonetheless allowed the declaratory judgment claim to proceed because it was reasonable to infer a threat of litigation from the letter by Faberge

---

[11] While Defendants cite *Medimmune* in passing, they fail to acknowledge the decision's importance and instead cite and rely upon cases under the old "reasonable apprehension" standard. (MTD pgs. 16:12-18:6).

1   declaring its intent to file an opposition proceeding.  *Id.* at 397.  Further, the Ninth Circuit

2   considered the circumstances after Chesebrough filed suit and stated:

3       Faberge did not dispel such an inference [of threatened litigation].  It did not
        disclaim an intent to pursue an infringement action, but, in fact responded to
4       Chesebrough's complaint with a counterclaim seeking damages for infringement.
        *The actual filing of a counterclaim for infringement bolsters Chesebrough's claim*
5       *that a real threat existed.*

6   *Id.* at 396-97 (emphasis added).

7           Applying *Medimmune* and the foregoing cases to the instant suit, there is no question that

8   the actual controversy requirement is satisfied in this case.  After receiving a refusal of an APEX

9   trademark application from the PTO, Apex Stores filed the Cancellation Action against certain of

10  24 Hour Fitness' APEX marks alleging a likelihood of confusion and trademark dilution, and

11  basing its claims on Apex Stores' alleged priority of use.  (Anderson Decl. ¶ 17, Exh. 3).  The

12  parties conferred following the filing the Cancellation Action, and discussed the potential of a

13  Letter of Consent to be provided by 24 Hour Fitness to Apex Stores to overcome the PTO's

14  refusal.  (Complaint, ¶ 18). After this avenue for resolution had been discussed, Apex Stores

15  abruptly sent 24 Hour Fitness a letter stating that it was "unwilling to compromise," "wanted to

16  protect its rights," and that it believed there was "a great likelihood of confusion."  Apex Stores

17  also brazenly demanded that 24 Hour Fitness phase out use of trademarks that 24 Hour Fitness

18  had spent over 14 years developing as brand names in the marketplace.  (Complaint, ¶ 19, Exh.

19  19).  For at least these reasons, 24 Hour Fitness filed the present declaratory action to determine

20  issues of priority in use of the APEX mark, whether 24 Hour Fitness' use is likely to cause

21  confusion with respect to Defendants' marks, and whether 24 Hour Fitness' registration and use

22  of its APEX trademarks violates any rights of Defendants.

23          Without question, the foregoing facts demonstrate that the trademark dispute between 24

24  Hour Fitness and Defendants was and is "definite and concrete, touching the legal relations of

25  parties having adverse legal interests," "real and substantial," and subject to "specific relief."  *See*

26  *Medimmune, supra*, 127 S. Ct. at 771-72.  Moreover, after 24 Hour Fitness filed suit, Apex, LLC

27  and Apex at Home filed suit in Rhode Island district court to assert the same trademark rights

28  about which Apex Stores had earlier stated it believe there was "a great likelihood of confusion"

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
PALO ALTO

18                          **24 HOUR FITNESS' OPPOSITION TO
                            DEFENDANTS' MOTION TO DISMISS**

1   and it was "unwilling to compromise." Therefore, consistent with *Medimmune* and Ninth Circuit

2   decisions, a case or controversy exists sufficient to support subject matter jurisdiction.

3          **2.**      **The Exercise of Declaratory Judgment Jurisdiction Is Proper.**

4       "When there is an actual controversy and a declaratory judgment would settle the legal

5   relations in dispute and afford relief from uncertainty or insecurity, in the usual circumstance the

6   declaratory judgment is not subject to dismissal." *SanDisk Corp. v. ST Microelectronics, Inc.*,

7   480 F.3d 1372, 1383 (Fed. Cir. 2007) (quoting *Genentech v. Eli Lilly & Co.*, 990 F.2d 931, 937

8   (Fed. Cir. 1993).  Further, there must be a "sound basis for refusing to adjudicate an actual

9   controversy." *Id.*  The Ninth Circuit has suggested additional considerations that may assist in

10  deciding whether to exercise jurisdiction, including:

11        Whether the declaratory action will settle all aspects of the controversy; whether
           the declaratory action will serve a useful purpose in clarifying the legal relations at

12        issue; whether the declaratory action is being sought merely for the purposes of
           procedural fencing or to obtain a "*res judicata*" advantage; or whether the use of a

13        declaratory action will result in entanglement between the federal and State court
           systems.

14

15  *See Government Employees Ins. Co. v. Dizol*, 133 F.3d 1220, 1225 (9th Cir. 1998).

16      It is clear that this declaratory action will settle and clarify all parties' legal relations

17  regarding their respective APEX marks as a single likelihood of confusion standard applies to all

18  claims in this action and in the Rhode Island Action. (*See* Section III.A.3 *supra*).  In addition, this

19  action has not been filed to obtain "procedural fencing"; instead, it was filed after months of

20  negotiations, following Apex Stores' Cancellation Action against 24 Hour Fitness, and its brazen

21  demand that 24 Hour Fitness "phase out" trademarks it had used for 14 years. (See Section II.D

22  *supra*).  Further, no entanglement exists between federal and state courts because trademark

23  issues fall under federal jurisdiction and any state law claims the parties wish to assert may

24  properly be asserted pursuant to a federal court's supplemental jurisdiction.  28 U.S.C. § 1367(a);

25  *See Sony Computer Entertainment America, Inc. v. America Medical Response, Inc.*, 2007 WL

26  781969, *6 (N.D. Cal 2007).

27         **3.**      **Because It Is the First-Filed Action, and No Equitable Exception**
                **Applies, this Court Should Retain Jurisdiction over this Dispute.**

28

Manatt, Phelps &
Phillips, LLP
Attorneys At Law
Palo Alto

19

**24 HOUR FITNESS' OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS**

1    "The well-established 'first-to-file' rule allows a district court to transfer, stay or dismiss

2    an action when a similar complaint has been filed in another federal court." *Ward v. Follett Corp*.,

3    158 F.R.D. 645, 648 (N.D. Cal. 1994).  In applying the rule, a court looks to three threshold

4    factors: (1) the chronology of the two actions; (2) the similarity of the parties; and (3) the

5    similarity of the issues.  *Guthy-Renker Fitness, LLC v. Icon Health & Fitness*, 179 F.R.D. 264,

6    270 (C.D. Cal. 1998).   In applying the first-to-file rule, there is no question this action is properly

7    maintained as a first-filed action.

8         This action was unquestionably filed first (Complaint ¶ 20; Ottaviani Decl. ¶ 16); this

9    action names as defendants Apex, LLC and Apex at Home (in addition to Apex Stores), the

10   plaintiffs in the Rhode Island Action (Ottaviani Decl. ¶ 16); all claims under both actions concern

11   the identical trademarks and will be resolved under an identical "likelihood of confusion"

12   standard (*see* Section III.A.3 *supra*).  While there are equitable exceptions to the first-to-file rule,

13   such as where the first action was a bad faith and anticipatory suit filed for the purpose of "forum

14   shopping" or where the balance of convenience weighs in favor of the later filed action, none of

15   these exceptions applies here.

16                    **a.      24 Hour Fitness' Declaratory Filing Was Not Made in "Bad
                              Faith"**
17

18        There is nothing resembling bad faith or forum shopping in this first-filed action.  The

19   purpose of allowing a party to file a declaratory relief action is to "alleviate the necessity of

20   waiting indefinitely for a [party] to file an infringement action."  *See Guthy-Renker Fitness, LLC*

21   *v. Icon Health & Fitness*, 179 F.R.D. at 272.  It allows a plaintiff to "expediently adjudicate the

22   issues presented … rather than engage in protracted discussions which may not result in

23   resolution."  *Id.*

24        Here, the dispute between the parties began as follows: on November 1, 2007, after its

25   trademark application was refused in part by the PTO based upon earlier 24 Hour Fitness

26   registrations, Apex Stores filed the Cancellation Action against 24 Hour Fitness' trademark

27   registrations for its APEX marks that had been in use since 1994.  (Complaint, ¶¶ 15,16).

28   Thereafter, 24 Hour Fitness attempted settlement over several months, which discussions abruptly

1    culminated a letter from by Apex Stores that there was "a great likelihood of confusion," that it

2    wanted "to protect its rights," it was "unwilling to compromise," and a demand that 24 Hour

3    Fitness "phase out" use of its APEX marks.  (*Id.*, ¶¶ 19, Exh. 4, 21).  With this grave threat to its

4    rights, 24 Hour Fitness filed this action in the jurisdiction where its principal place of business

5    and personnel and documents involved in its APEX trademarks are located. (Griffin Decl.

6    ¶¶ 2-5).

7         24 Hour Fitness' 42-day delay in serving its complaint does not evidence bad faith, and

8    Defendants provide no case supporting such an argument.  In fact, courts have recognized that

9    delaying service of a first-filed action manifests a party's desire "to avoid litigation if at all

10   possible."  *See, e.g., Biogen, Inc. v. Schering AG*, 954 F. Supp. 391, 398 (D. Mass. 1996).  With

11   the growing threat to its rights, 24 Hour Fitness filed this action and thereafter continued in good

12   faith to attempt to reach a settlement with Apex Stores, repeatedly following up with Defendants'

13   counsel in an attempt to continue discussions.  (Complaint, ¶ 21; Ottaviani Decl. ¶¶ 10-13).

14   Courts have declined to find bad faith where the plaintiff in the first-filed action does not serve

15   the complaint immediately.  *See, e.g., Guthy-Renker Fitness, supra,* 179 F.R.D. at 272 (finding

16   that "Plaintiff's [87-day] delay in serving the First Amended Complaint comported with both the

17   requirements of [Federal Rules of Civil Procedure,] Rule 4(m)"; no exception to first-to-file rule);

18   *Ward v. Follett*, 158 F.R.D. 645, 649 (N.D. Cal. 1994) (first-filed party waited nearly four months

19   to serve second-filed party; no exception to first-filed rule).

20          **b.    Contrary to Defendants' Assertion, 24 Hour Fitness' Complaint
               Was Not Filed on an Anticipatory Basis.**

21

22          A suit is anticipatory when the plaintiff filed upon receipt of specific, concrete indications

23   that a suit by defendant was imminent.  *Sony Computer Entertainment America, Inc.*, *supra*, 2007

24   WL 781969 at *2 (N.D. Cal 2007).  The lack of specific deadline by which Apex Stores would

25   act on its demand or other concrete indication from Apex Stores such as a draft unfiled complaint

26   makes clear that 24 Hour Fitness' filing was not anticipatory.  *See Ward*, *supra*, 158 F.R.D. at 649

27   (no exception to first-to-file rule; first-filed party's "suit was not brought pursuant to a notice-of-

28   suit letter or any other concrete indication that suit was imminent); *Sony Computer Entertainment*

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
PALO ALTO

21

**24 HOUR FITNESS' OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS**

1   *America, Inc.*, *supra*, 2007 WL 781969 at *3 (no anticipatory suit exception; even though

2   plaintiff provided draft complaint, no lawsuit was imminent because defendant's letter stated that

3   its enclosed complaint "<u>may</u> be filed").  Here, Defendants did not serve a draft, unfiled complaint

4   on 24 Hour Fitness and Apex Stores' March 10, 2008 letter is devoid of any timeline by which it

5   intended to file suit if its demands were not met.  (*See* Ottaviani Decl., ¶ 10-14, Exh. E).

6       Defendants discuss the inapposite case of *Z-Line Designs, Inc. v. Bell'O International,*

7   *LLC*, 218 F.R.D. 663 (N.D. Cal. 2003) (MTD, pg. 24), in their argument that 24 Hour Fitness'

8   filing was "anticipatory."  In *Z-Line*, the demand letter at issue contained <u>a specific deadline</u>, by

9   which the plaintiff Z-Line inferred that defendant would bring suit against Z-Line.  *Z-Line*, fix

10  218 F.R.D. at 666.  Further, the specific deadline was <u>extended twice</u> at Z-Line's request, which

11  the court viewed as <u>misleading communication</u> by Z-Line that it was willing to talk settlement.

12  *Id*.  With the communications between Z-Line and Bell'O regarding the deadlines and extensions,

13  the court was "satisfied that plaintiff filed [the] action in anticipation of specific, concrete

14  indications."  *Id*.  Here, because there was no specific deadline and no extension, this case is

15  distinguishable and 24 Hour Fitness' suit is not antipatory.

16      Moreover, given Apex Stores' newly announced threat on March 10, 2008 to strip 24

17  Hour Fitness of its trademark rights, it is ludicrous to suggest that 24 Hour Fitness be required to

18  refrain from filing suit to protect itself.  Such an approach would require a trademark holder

19  facing threat of an infringement suit to stand by indefinitely, effectively foreclosing any access to

20  the type of relief provided by the Declaratory Judgment Act and rendering its provisions a nullity.

21  *See, e.g.*, *Guthy-Renker Fitness*, 179 F.R.D. at 272.  Instead, since it was unwilling to "phase out"

22  or otherwise relinquish any of its intellectual property rights and Apex Stores' March 10th letter

23  made it clear that litigation between the parties was unavoidable, it filed suit approximately 17

24  days later.  These facts do not represent a "race" to the courthouse.

25          **c.    California is a Convenient Forum for Adjudication of this**
               **Dispute.**

26

27      24 Hour Fitness filed this action in the jurisdiction where (1) its principal place of

28  business is located, (2) its executive offices are located, (3) 24 Hour Fitness uses its APEX marks,

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
PALO ALTO

22          **24 HOUR FITNESS' OPPOSITION TO**
            **DEFENDANTS' MOTION TO DISMISS**

(4) senior management and other personnel involved in the registration of the APEX trademarks are located and (5) records and documents establishing 24 Hour Fitness' registration of the APEX trademarks are located. (Griffin Decl., ¶¶ 2-5). Accordingly, Defendants' cannot obtain the "*forum non conviens*" exception to the first-to-file rule. *See Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986).

## IV.    <u>CONCLUSION.</u>

Based upon the foregoing, personal jurisdiction over Apex, LLC and Apex Stores is proper. Furthermore, an actual controversy supports declaratory judgment jurisdiction in this case.

Dated:    August 21, 2008                  MANATT, PHELPS & PHILLIPS, LLP

By:    /s/ Britt L. Anderson
       Susan E. Hollander (SBN 133473)
       Britt L. Anderson (SBN 212092)
       MANATT, PHELPS & PHILLIPS, LLP
       1001 Page Mill Road, Building 2
       Palo Alto, CA  94304-1006
       Telephone:        (650) 812-1300
       Facsimile:        (650) 213-0260

       Shari Mulrooney Wollman (SBN 137142)
       MANATT, PHELPS & PHILLIPS, LLP
       11355 West Olympic Boulevard
       Los Angeles, CA  90064
       Telephone:        (310) 312-4000
       Facsimile:        (310) 312-4224
       *Attorneys for Plaintiff*

90025277.3