1  SHEPPARD MULLIN RICHTER & HAMPTON, LLP
   NEIL A. SMITH (SBN 63777)
2  NATHANIEL BRUNO (SBN 228118)
   Four Embarcadero Center, 17th Floor
3  San Francisco, CA 94111-4109
   Telephone: (415) 434-9100
4  Facsimile:  (415) 434-3947
   Email: nsmith@sheppardmullin.com
5  Email: nbruno@sheppardmullin.com

6  Attorneys for Defendants
   APEX STORES, LLC; Apex LLC; Apex At Home, LLC
7

8              UNITED STATES DISTRICT COURT

9              NORTHERN DISTRICT OF CALIFORNIA

10                    OAKLAND DIVISION

11

| 12 | 24 Hour Fitness USA, Inc., | Case No. 4:08-cv-01681-SBA |
|---|---|---|
| 13 | Plaintiff, | |
| 14 | v. | **DEFENDANTS' REPLY TO PLAINTIFF 24 HOUR FITNESS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS** |
| 15 | Apex Stores, LLC; Apex, LLC; Apex at Home, LLC, | |
| 16 | | |
| 17 | Defendants. | Honorable Saundra Brown Armstrong<br>United States District Judge |
| 18 | | Hearing Date: September 9, 2008<br>Hearing Time: 1:00 p.m. |
| 19 | | Courtroom: 3 |

# TABLE OF CONTENTS

Table of Authorities ........................................................................................................................ii

    I.   Summary ........................................................................................................................... 1

    II.  Argument ........................................................................................................................... 3

        A.  This Court Cannot Exercise Personal Jurisdiction Over
            Apex Stores and Apex LLC ................................................................................... 3

           1.  Apex Stores' Former Ownership and Apex LLC's
               Ownership of the "Apex" Marks Does Not Subject Them
               To Jurisdiction In This Court ........................................................................ 3

           2.  Defendants Operating As Separate Corporate Affiliates
               Lack the Necessary Unity of Interest For This Court to
               Exercise Jurisdiction .................................................................................... 5

        B.  This Court Cannot Exercise Subject Matter Jurisdiction Over
            The Defendants ....................................................................................................... 6

        C.  Even If the Court Determines There Is An Actual Controversy
            the Court Should Decline to Exercise Jurisdiction Over the Defendants,
            In Favor of Allowing The Trademark Defendants to Proceed on Their
            Rhode Island Complaint ....................................................................................... 10

# TABLE OF AUTHORITIES

PAGE

**CASES:**

Anita's New Mexico Style Mexican Food, Inc., v. Anita's Mexican Foods Corporation,
201 F.3d 314 (4th Cir. 2000) ........................................................................................ 4

Chesebrough-Ponds, Inc. v. Faberge, Inc.,
666 F.2d 393 (9th Cir. 1982) ..................................................................................... 10 n.2

Citigroup Inc. v. City Holding Co.,
97 F.Supp.2d 549 (S.D.N.Y. 2000) ............................................................................. 4

Concat LP v. Unilever, PLC,
350 F. Supp. 2d 796 (N.D. Cal. 2004) ........................................................................ 6

Dainippon Screen Mfg. Co., Ltd. v. CFMT, Inc.,
142 F.3d 1266 (Fed. Cir. 1998) .................................................................................. 6

Dex Products, Inc. v. Houghteling,
2006 WL 1751903 (N.D.Cal,. Jun. 23, 2006) ........................................................... 4

GAF Bldg. Materials Corp. v. Elk Corp. of Dallas,
90 F.3d 479 (Fed. Cir. 1996) ...................................................................................... 5 n.1

HSI IP v. Champion Window Mfg. & Supply Co.,
510 F.Supp.2d 948 (M.D. Fla. 2007) .......................................................................... 10 n.2

Maryland Casualty Co. v. Pacific Coal & Oil Co.,
312 U.S. 270, 61 S.Ct. 510, 85 L.Ed. 826 (1941) ...................................................... 6

MedImmune, Inc. v. Genentech, Inc.,
127 S.Ct. 764, 166 L.Ed.2d 604 (2007) ..................................................................... 6

Prasco, LLC v. Medicis Pharmaceutical Corp. No. 2007-1524
2008 WL 3546217 (C.A.Fed. (Ohio) ......................................................................... 10, 11

Red Wing Shoe Co., Inc. v. Hockerson-Halberstadt, Inc.,
148 F.3d 1355 (Fed. Cir. 1998) .................................................................................. 4

Solar Gear Inc. v. Sunglass Hut Int '1, Inc.,
32 U.S.P.Q. 2d 1355 (N.D. Cal. 1994) ....................................................................... 4

State Farm Fire & Cas. Co. v. Mhoon,
31 F.3d 979 (10th Cir.1994) ....................................................................................... 11, 12

Surefoot LC v. Sure Foot Corp.,
531 F.3d 1236 ............................................................................................................. 9, 10

**RULES:**

Fed. R. Civ. Proc. 15(d) .................................................................................................. 12

**OTHER AUTHORITIES:**

J. Thomas McCarthy, McCarthy on Trademarks, § 32:52 (Rel. 3/2008) .................................. 9

SHEPPARD MULLIN RICHTER & HAMPTON, LLP
NEIL A. SMITH (SBN 63777)
NATHANIEL BRUNO (SBN 228118)
Four Embarcadero Center, 17th Floor
San Francisco, CA 94111-4109
Telephone: (415) 434-9100
Facsimile:   (415) 434-3947
Email: nsmith@sheppardmullin.com
Email: nbruno@sheppardmullin.com

Attorneys for Defendants
APEX STORES, LLC; Apex LLC; Apex At Home, LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| 24 Hour Fitness USA, Inc.,<br><br>             Plaintiff,<br><br>     v.<br><br>Apex Stores, LLC; Apex, LLC; Apex at Home, LLC,<br><br>             Defendants. | Case No. 4:08-cv-01681-SBA<br><br>**DEFENDANTS' REPLY TO PLAINTIFF 24 HOUR FITNESS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**<br><br>HEARING: September 9, 2008 at 1:00 P.M.<br><br>COURTROOM:  3 |

**I.    SUMMARY**

In its opposition to Defendants' motion to dismiss its tactically filed declaratory judgment complaint, 24 Hour Fitness USA, Inc. ("24 Hour Fitness") mischaracterizes the parties' negotiations leading up to its stealth filing in an effort to mask its intent to forum shop and subvert the true plaintiff's choice of forum.  Further, 24 Hour Fitness' opposition attempts to induce this Court to flout the fundamental limitation on its exercise of personal jurisdiction by simply ignoring the separate legal entities it named as defendants and blindly attributing the contacts of only one Defendant -- Apex at Home, LLC ("Apex at Home"), an e-retailer with a presence in this jurisdiction -- to the remaining two Defendants who have no contact with this

forum.

The case law purportedly relied on by 24 Hour Fitness does not authorize this Court's assertion of jurisdiction over Apex Stores, LLC ("Apex Stores") and Apex, LLC. Instead, under the well established legal principles, 24 Hour Fitness has failed to satisfy its burden of proving that corporate affiliates that maintain separate books and records, maintain separate bank accounts, operate under separate budgets, and do not share asset and liabilities have an unity of interest sufficient a court to impute personal jurisdiction over one corporate affiliate to another.

Further, the governing case law makes it clear that a licensor's relationship with a licensee that has sufficient contacts in the forum state does not alone grant the court the right to exercise personal jurisdiction over the licensor. 24 Hour Fitness fails to cite any authority which allows a court to exercise personal jurisdiction over a defendant in an non-infringement declaratory judgment action, where the dispute over plaintiff's potentially infringing activity does not arise out of or result from the defendant's forum-related activities. Here, 24 Hour Fitness' claim arises out of its use of Apex, LLC's and Apex at Home's (the "Trademark Defendants") federally registered trademarks in California does not arise out of Defendants' actions in California. Accordingly, 24 Hour Fitness' assertion that this Court has personal jurisdiction over Apex Stores and Apex, LLC does not pass muster.

In addition, 24 Hour Fitness' contention that its declaratory judgment action was ripe when filed because the Defendants' had served it with a cease and desist letter, or otherwise threatened litigation, is spurious. 24 Hour Fitness blatantly mischaracterizes the contents of Defendants' letter, which could not have more clearly articulated a desire to explore a consensual resolution of the parties' respective uses of the marks at issue, without any need for litigation. In fact, the actions taken by 24 Hour Fitness are far more egregious than the circumstances that have led other federal courts to reject a "first filed" declaratory judgment action as an improper

"anticipatory suit." Specifically, 24 Hour Fitness: (1) misrepresented to Defendants' counsel that it did not use the "Apex" marks in a retail capacity, which is the line of business in which the "Trademark Defendants" have established prior use by many decades, and instead only used the marks in connection with the distribution of goods and services to health and fitness centers; (2) anticipated that a dispute would arise if and when Defendants learned that it was, in fact, expanding its distribution business into a new, retail line of business; (3) quietly filed a declaratory judgment action seeking a declaration that its new retail use of the marks does not violate the Trademark Defendants' federal registration of the "Apex" marks before correcting its prior misrepresentation by disclosing its intention to use the marks in a retail capacity; (4) forum shopped by filing, but not serving, its Original Complaint as far from the true plaintiff's home forum as it could while remaining on this continent; and (5) took a very "hardball" approach to negotiations with Defendants' counsel once it disclosed the intention to use the marks in retail, purposefully not serving or informing Defendants of the Original Complaint until the negotiations broke down and the Trademark Defendants sued to stop 24 Hour Fitness' new retail use of their marks. 24 Hour Fitness has not been able to identify any authority suggesting that this Court should countenance such procedural gamesmanship and manipulation.

## II.    ARGUMENT

### A.    This Court Cannot Exercise Personal Jurisdiction Over Apex Stores and Apex, LLC.

#### 1.    Apex Stores' Former Ownership And Apex, LLC's Ownership of The "Apex" Marks Does Not Subject Them to Jurisdiction in This Court.

24 Hour Fitness' contention that the exercise of personal jurisdiction over Apex at Home is to be imputed to Apex Stores and Apex, LLC, who are the former and current owners of the "Apex" marks and who license them to Apex at Home for its retail operations is simply baseless. 24 Hour Fitness attempts to support its meritless argument by citing to a string of decisions

involving plaintiffs who have filed affirmative claims of infringement against multiple defendants, including licensors, arising out of allegedly infringing on use of plaintiff's trademarks in the forum state. *See Anita's New Mexico Style Mexican Food, Inc. v. Anita's Mexican Foods Corporation*, 201 F.3d 314 (4th Cir. 2000); *Solar Gear Inc. v. Sunglass Hut Int'l, Inc.*, 32 U.S.P.Q. 2d 1355 (N.D. Cal. 1994); *Citigroup Inc. v. City Holding Co.*, 97 F.Supp.2d 549 (S.D.N.Y. 2000). But this not a case in which 24 Hour Fitness has alleged that Apex at Home's retail use of the "Apex" marks in California infringe 24 Hour Fitness' trademark rights. So, whether Apex Stores and/or Apex, LLC could ever be said to exercise control over Apex at Home's use of the marks in California sufficient to impute that use to those Defendants over a claim arising out of such use is decidedly irrelevant. 24 Hour Fitness' case seeks a declaration that **24 Hour Fitness'** use of the "Apex" marks around the country does not infringe Apex Stores' and Apex, LLC's federal trademark rights. That cause of action arises out of those Defendants' registration of their federal trademarks - - which occurred entirely outside of California - - and 24 Hour Fitness' use, which either is or is not infringing.

In short, 24 Hour Fitness has argued at length for this Court to impute jurisdiction over Apex Stores and Apex, LLC over claims that 24 Hour Fitness has not brought. Moreover, it is well-settled that the mere existence of a licensor/licensee relationship, where a licensee has contacts in the forum, does not confer jurisdiction over the licensor. See *Dex Products, Inc. v. Houghteling*, 2006 WL 1751903, at *1, *4-5 (N.D. Cal. 2006) (court did not have personal jurisdiction over licensor although its licensee mentioned sufficient sales in California to subject the licensee to jurisdiction); *See Red Wing Shoe Co., Inc. v. Hockerson-Halberstadt, Inc.,* 148 F.3d 1355, 1361 (Fed. Cir. 1998) ("HHI's licensees have extensive contacts with Minnesota, but this additional factor is also insufficient to submit HHI to personal jurisdiction in the state. In simple terms, doing business with a company that does business in Minnesota is not the same as

doing business in Minnesota.").

Lastly, Apex Stores' registration of the domain name <apexhealthandfitness.com> does not grant this court personal jurisdiction over the Defendant because this registration, which notably occurred after the filing of this action[1], does not give rise to 24 Hour Fitness' claim for non-infringement and was not purposely directed toward 24 Hour Fitness. Over the last 10 years, Apex Stores has registered 1,500 domain names, hundreds of which use a variation of "Apex," for the operations it carried on until 2001, and Apex at Home has conducted since. (Supplemental Decl. of Andrew Gates, ¶ 2.) 24 Hour Fitness' desperate attempt to suggest that the Defendants have somehow targeted their activities at 24 Hour Fitness in California by focusing on 1 out of 1,500 domain names registered by the Defendants continues to ignore the fact that 24 Hour Fitness does not claim that any of the Defendants has infringed its trademark rights, by any conduct in California, or elsewhere.

### 2. Defendants Operating as Separate Corporate Affiliates Lack the Necessary Unity of Interest For this Court to Exercise Jurisdiction.

24 Hour Fitness erroneously argues that Defendants have an unity of interest sufficient for this Court to exercise personal jurisdiction over all of them based on Apex at Home's acknowledged e-retail presence. 24 Hour Fitness fails to support its contention with legal authority that this Court should find an unity of interest among Defendants Apex Stores, Apex, LLC, and Apex at Home, corporate affiliates that maintain separate books and records, maintain separate bank accounts, operate under separate budgets, and do not share asset and liabilities have an unity of interest sufficient a court to impute personal jurisdiction over one corporate affiliate to another. (Gates Decl. ¶¶ 27-29.) 24 Hour Fitness asserts that the partial overlap of management among all three corporate affiliates establishes that the there exists a unity of control. Yet, the two

---

[1] Later events cannot be used to create jurisdiction where none existed at the time of filing. *GAF Building Materials Corp. v. Elk Corp.*, 90 F.3d 479, 483 (Fed. Cir. 1998).

decisions it cites involve companies that not only share a common management, but also explicitly operate as one company. *See Dainippon Screen Mfg. Co., Ltd. v. CFMT, Inc.*, 142 F.3d 1266 (Fed. Cir. 1998); *Concat LP v. Unilever, PLC*, 350 F. Supp. 2d 796, 812 (N.D. Cal. 2004). 24 Hour Fitness has presented no record on which this Court may base a conclusion that the corporate form has not been maintained between the three separate Defendant entities. The original Declaration of Andrew Gates stands uncontested, and provides directly contrary evidence.

### B. This Court Cannot Exercise Subject Matter Jurisdiction Over the Defendants

Because an actual controversy did not exist at the time 24 Hour Fitness silently filed its Original Complaint seeking a declaratory judgment - - then proceeded to sit on it without serving or informing Defendants' counsel it was filed, while dramatically changing its position in negotiations - - subject matter jurisdiction does not exist.

To satisfy the "actual controversy" requirement of the Declaratory Judgment Act, "the dispute must be definite and concrete, touching the legal relations of parties having adverse legal interests; the dispute must be real and substantial and admit of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts." *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 S.Ct. 764-771, 166 L. Ed. 2d. 604. (2007). Not only that, but the "question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Id*. (quoting *Maryland Casualty Co. v. Pacific Coal & Oil Co.,* 312 U.S. 270, 273, 61 S.Ct. 510, 85 L.Ed. 826 (1941))

An examination of the all of the circumstances which culminated in 24 Hour Fitness' stealth of filing a declaratory judgment action leads to the inescapable conclusion that filed the

declaratory judgment action before it was ripe. In fact, 24 Hour Fitness filed its Original Complaint first, picked the fight, then sprang the Complaint on Defendants only after the Trademark Defendants reacted to the fight 24 Hour Fitness started. On November 1, 2007, Apex Stores filed with the USPTO TTAB a Petition for Cancellation against 24 Hour Fitness requesting cancellation of 24 Hour Fitness' registration as confusingly similar to Apex Stores' longstanding retail "Apex" marks - - having been forced to employ the necessary logic of the PTO's position that 24 Hour Fitness' distribution-related registrations were confusingly similar to a follow-on retail mark proposed by Apex Stores. (Ottaviani Decl. ¶ 7). While the Petition for Cancellation against 24 Hour Fitness was pending, counsel for both parties engaged in settlement discussions, commencing on January 14, 2008, when Defendants' counsel contacted counsel for 24 Hour Fitness to inquire "whether 24 Hour Fitness would be amenable to settling this dispute by issuing a letter of consent to our client for the registration that was refused by the USPTO." (Ottaviani Decl. ¶ 7). On the same day, 24 Hour Fitness' counsel sent an e-mail stating that she would "follow up with our client regarding its use of the Apex mark for 'distributorship featuring vitamins & fitness programs,' and the possibility of issuing a letter of consent." (*Id.*, Ex. C). On January 29, 2008, counsel held a telephone conference in which Plaintiff's counsel represented to Defendants' counsel that 24 Hour Fitness was not using the "Apex" mark for retail sales, and further stated that there was a possibility that 24 Hour Fitness would consent to Apex Stores' registration of an "Apex Companies" service mark for retail services. (*Id.* ¶ 8). In a February 5, 2008 e-mail, counsel for 24 Hour Fitness inquired again as to whether Apex Stores was interested in the possibility of settling the TTAB proceeding by obtaining a letter of consent for its registration. (*Id.* ¶ 9, Ex. D).

While 24 Hour Fitness' counsel was attempting to get Defendants' counsel to sign off on a consent to use agreement under the guise that 24 Hour Fitness would not use that consent to

pursue a competitive retail use of the marks, Defendants became concerned about that potential. (Supplemental Declaration of John E. Ottaviani at ¶ 6.) On March 10, Defendants' counsel wrote to 24 Hour Fitness' counsel explaining Defendants' decades-long history of use of the "Apex" marks for retail purposes, and raising a concern that an open-ended consent to use would not work if it could cause confusion with Defendants' rights to that retail use of the marks. (*Id.* ¶ 8.)

In fact, it is hard to imagine how Defendants' counsel could possibly have been more clear that Defendants' intention was to work with 24 Hour Fitness to come to a mutually satisfactory resolution without any litigation. Specifically, Defendants' counsel March 10 letter stated:

> "Given our client's long history of doing business under the Apex name, and its use which dates back for three quarters of a century before your client came into existence, our client hopes we can resolve this issue amicably.
>
> Our client certainly continues to be open to settlement discussions, and suggests that we suspend the proceedings to permit such discussions to continue if your client is interested. One possible scenario would include permitting your client some period of time to continue to use the APEX FITNESS mark while phasing it out and developing a new brand identity or adopting the 24 HOUR FITNESS brand. You and your client may also have proposals to offer that we have not considered.
>
> Please let me know whether or not your client is amendable to suspending the proceeding and continuing settlement discussions."

(Original Ottaviani Decl. at Ex. E.)

24 Hour Fitness did not respond to the March 10 letter right away. Instead, the next thing it did was quietly file its Original Complaint on March 27, 2008 without serving that Complaint or informing Defendants' counsel it was filed. 24 Hour Fitness finally responded to the March 10 letter on April 11 by insisting on a consent to use agreement. (Suppl. Ottaviani Decl. ¶ 9.) Defendants' counsel requested that 24 Hour Fitness' counsel propose specific terms for the parties' respective use. (*Id.* ¶ 10.) But, with the Complaint still kept close to their vest, 24 Hour

Fitness' counsel played hardball, refusing to provide any proposed terms beyond an open-ended consent to use and finally disclosing that 24 Hour Fitness intended to use the "Apex" marks in retail, after all, on May 5, 2008. (*Id.* ¶ 11.)  Having been misled and getting nowhere in settlement discussions, the Trademark Defendants were forced to bring a complaint to stop 24 Hour Fitness' newly disclosed intention to pursue an infringing use of their marks, and they immediately served their Complaint. Only then did 24 Hour Fitness serve its Original Complaint, followed by a demand that the Trademark Defendants concede the forum for resolution of their affirmative claims.

A recent Tenth Circuit decision, *Surefoot LC v. Sure Foot Corp.*, 531 F.3d 1236 (10th Cir. 2008), applying the MedImmune standard in which 24 Hour Fitness's opposition relies, provides the perfect rubric for assessing whether an actual controversy existed when 24 Hour Fitness filed the declaratory judgment action.  In *Surefoot*, the plaintiff filed a declaratory judgment action after the defendant accused plaintiff of infringing on its trademark, threatening plaintiff with litigation if it failed to change its name, and filing five administrative petitions opposing plaintiff's attempts to obtain trademark registrations. *Id.* at 1237.  Looking at all of the circumstances, the Tenth Circuit held that five TTAB opposition proceedings coupled with a cease-and-desist letter was sufficient to find an actual controversy between the parties. *Id.* at 1245.

Significant to this Court's analysis of our circumstances is the fact that the Tenth Circuit openly questioned whether "the filing of a single TTAB opposition without a hint of an infringement claim" would be sufficient to establish grounds for a declaratory judgment action. 531 F.3d at 1247.  Particularly, the Tenth Circuit noted the practical "concern 'not to short-circuit the administrative tribunal that has already achieved jurisdiction over the issues' separating the parties." *Id.* (quoting *McCarthy on Trademarks* § 32:52).  Here, all that preceded 24 Hour

Fitness' Original Complaint was a single TTAB proceeding[2], negotiations in an effort to settle that single proceeding with no further litigation (and even an offer to stay the proceeding to aid such discussions), repeated affirmation that Defendants wished to reach a settlement without litigation, and no suggestion of "infringement" whatsoever.

Apparently recognizing that there was no legitimate ground for a declaratory judgment action when it filed its Original Complaint, 24 Hour Fitness' attempts to convince the Court that the Trademark Defendants' commencement of an infringement action (only after 24 Hour Fitness switched positions and insisted it would use the Trademark Defendants' marks in a competitive retail capacity) somehow justifies 24 Hour Fitness' earlier filing. But it is well established that "later events may not create jurisdiction where none existed at the time of filing." *Prasco, LLC v. Medicis Pharmaceutical Corp.*, 2008 WL 354 6217 *4 (Fed. Cir. 2008). Accordingly, there was no basis for 24 Hour Fitness' Original Declaratory Judgment Complaint and no subject matter jurisdiction adhered before the Trademark Defendants filed their Rhode Island lawsuit.

    **C.** **Even If the Court Determines There Is An Actual Controversy the Court Should Decline to Exercise Jurisdiction Over the Defendants, In Favor of Allowing The Trademark Defendants to Proceed on Their Rhode Island Complaint.**

Although a district court has jurisdiction to entertain a case, as a discretionary matter, the court may decline to do so. *Surefoot LC*, 531 F.3d 1236, 1248. The Declaratory Judgment Act does not demand that a district court decide every declaratory suit brought to it even where the court has the power to do so. *Id.* The court must consider the following factors: (1) whether a declaratory action would settle the controversy; (2) whether it would serve a useful purpose in

---

[2] As noted by the 10th Circuit, federal courts have recognized that the filing of notice of opposition with the Patent and Trademark Office is not equivalent to a charge of infringement. *See Chesebrough-Pond's, Inc. v. Faberge, Inc.* 666 F.2d 393, 396 (9th Cir. 1982) ("simple opposition proceeding in the Patent and Trademark Office generally will not raise a real and reasonable apprehension of suit"); *HSI IP v. Champion Window Mfg. & Supply Co.,* 510 F.Supp.2d 948, 956 (M.D. Fla. 2007) ("filing of a TTAB action is not, on its own, sufficient to create an actual controversy").

clarifying the legal relations at issue; (3) whether the declaratory remedy is being used merely for the purpose of "procedural fencing" or "to provide an arena for a race to res judicata"; (4) whether use of a declaratory action would increase friction between our federal and state courts and improperly encroach upon state jurisdiction; and (5) whether there is an alternative remedy which is better or more effective. *Id.* (citing *State Farm Fire & Cas. Co. v. Mhoon*, 31 F.3d 979, 982-83 (10th Cir. 1994)).

If this declaratory action were to move forward, it would not settle the entire controversy and, so, will not serve the purpose of resolving the legal disputes at issue. Specifically, 24 Hour Fitness' Complaint in this Court seeks only a declaration that its use of the "Apex" marks does not infringe upon the Defendants' federally registered trademark rights. In addition to this single issue, the Trademark Defendants' Rhode Island Complaint raises claims that 24 Hour Fitness has infringed their common law trademark rights, has committed common law unfair competition and they seek cancellation of 24 Hour Fitness' federal registrations.

Moreover, 24 Hour Fitness simply misunderstands the procedural posture of its case when it contends that its purported "first filed" action includes all the same parties as the Rhode Island lawsuit. 24 Hour Fitness' Original Complaint named only Apex Stores. But, by the time 24 Hour Fitness finally saw fit to serve that Complaint, that party had transferred its trademarks to Apex, LLC. 24 Hour Fitness' misnamed "First Amended Complaint" finally naming the real parties in interest - - the Trademark Defendants - - raised new allegations based on facts that occurred only after the Original Complaint had been filed. (First Amended Complaint ¶¶ 21-23, 28.) As such, it is a Supplemental Complaint.

Accordingly, the First Amended Complaint is actually a Supplemental Complaint. *See Prasco, LLC v. Medicis Pharmaceutical Corp.,* CA. 2007-1524, 2008 WL 3546217, at *4 (Fed Cir. Aug. 15, 2008) ("[b]ecause the Amended Complaint included allegations regarding events

that happened after the first complaint, technically it is a supplemental complaint, not an 'amended complaint'"). On motion to the court, Federal Rule of Civil Procedure 15(d) permits a party to serve a supplemental pleading to cure defects in the initial complaint. *Id.* (citing Fed.R.Civ.P. 15(d)). 24 Hour Fitness has neglected to file such a motion in this Court. And, there is no legitimate basis for this Court to allow 24 Hour Fitness to file a Supplemental Complaint in May, relating back to a March priority, when at the time 24 Hour Fitness sought to supplement and cure the jurisdictional defects in its Complaint, the Trademark Defendants already had filed and served a comprehensive complaint that will resolve all issue in dispute.

It is worth noting that 24 Hour's belatedly filed opposing proposed order fails to even address Defendants' position that, even were this Court to find that subject matter jurisdiction exists, it should not exercise that jurisdiction, but should instead defer to Apex's case pending in the District of Rhode Island pursuant to the application of first-to-file case law. Accordingly, this Court should decline to exercise jurisdiction and allow the Rhode Island Complaint to proceed for resolution of all issues.

Importantly, the circumstances of this case present a far more egregious example of bad faith "procedural fencing" than other "first filed" actions rejected as "a race to *res judicata*." *State Farm*, 31 F.3d 982-83. Allowing is action to continue would countenance the use of an "under the covers" declaratory judgment action filed before the Defendants even knew there was a serious dispute such that they could have any basis to commence action seeking to protect their affirmative rights. Having first misrepresented that it did not use the "Apex" marks in a retail capacity - - the principal concern of the Trademark Defendants - - 24 Hour Fitness silently filed its Complaint, then disclosed the substantive dispute concerning retail use, then sandbagged Defendants with long-delayed service of its Complaint only when the Trademark Defendants reacted to the new information concerning 24 Hour Fitness' intended infringement. The case law

cited in Defendants' Opening Memorandum establishes that federal courts do not countenance such bad faith, manipulative litigation tactics. Instead, this Court should refuse to exercise any jurisdiction it believes it has on this so-called "first filed" action.

APEX STORES, LLC; APEX, LLC; APEX AT HOME, LLC

Dated: August 28, 2008          By: */s/ Nathaniel Bruno*

    Neil A. Smith (SBN 63777)
    Nathaniel Bruno (SBN 228118)

    Sheppard Mullin Richter & Hampton, LLP
    Four Embarcadero Center, 17th Floor
    San Francisco, CA 94111-4109
    Telephone: (415) 434-9100
    Facsimile:  (415) 434-3947
    *Attorneys for Defendants*