SHEPPARD MULLIN RICHTER & HAMPTON, LLP
NEIL A. SMITH (SBN 63777)
NATHANIEL BRUNO (SBN 228118)
Four Embarcadero Center, 17th Floor
San Francisco, CA 94111-4109
Telephone: (415) 434-9100
Facsimile:  (415) 434-3947
Email: nsmith@sheppardmullin.com
Email: nbruno@sheppardmullin.com

Attorneys for Defendants
APEX STORES, LLC; Apex LLC; Apex At Home, LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| 24 HOUR FITNESS USA, Inc.,<br><br>    Plaintiff,<br><br>    v.<br><br>Apex Stores, LLC; Apex LLC; Apex At Home, LLC,<br><br>    Defendants. | Case No. 4:08-cv-01681-SBA<br><br>**SUPPLEMENTAL DECLARATION OF JOHN E. OTTAVIANI**<br><br>Honorable Saundra Brown Armstrong<br>United States District Judge<br><br>Hearing Date:  September 9, 2008<br>Hearing Time:  1:00 p.m.<br>Courtroom:  3 |

**SUPPLEMENTAL DECLARATION OF JOHN E. OTTAVIANI**

I, John E. Ottaviani, having been duly sworn, depose and say as follows:

1. I am a Partner in the Intellectual Property Group at the law firm of Edwards Angell Palmer and Dodge LLP. I am counsel for Apex Stores, LLC ("Apex Stores"), Apex LLC ("Apex LLC") and Apex at Home, LLC ("Apex at Home") (collectively, "Defendants") who have been named as defendants in the above-captioned action.

2. I am generally familiar with the materials and supporting declarations submitted by Plaintiff 24 Hour Fitness USA, Inc. ("24 Hour Fitness") in opposition to Defendants' Motion to Dismiss. The information contained in this supplemental declaration is intended to respond to certain representations made in those materials regarding the communications between the parties prior to and following the filing of this lawsuit. The information contained in this supplemental declaration is in addition to the information contained in my original declaration filed in support of Defendants' Motion to Dismiss.

3. After the United States Patent and Trademark Office ("USPTO") refused the application of Apex Stores to register the service mark "Apex Companies" based, in part, on its determination that there would be a likelihood of confusion with three registrations owned by 24 Hour Fitness, Apex Stores filed a Petition for Cancellation with the USPTO seeking the cancellation of the three 24 Hour Fitness registrations.

4. On January 14, 2008, in an attempt to begin negotiating a resolution with 24 Hour Fitness, and as required by the TTAB rules of procedure, I participated in a telephone conference with Christine Klenk ("Klenk") of Manatt, Phelps & Phillip, LLP ("Manatt"), counsel for 24 Hour Fitness. During this conference, I inquired as to how 24 Hour Fitness was using the marks in connection with its products. Attorney Klenk expressed her understanding that 24 Hour Fitness distributed its products through health and fitness clubs. Based on Defendants' understanding that 24 Hour Fitness was not engaged in the retail sale of its products, but was instead only distributing its products to health and fitness centers, I attempted to explore possible settlement options by inquiring as to whether 24 Hour Fitness would agree to settle this dispute by issuing a letter of consent to our client for the registration that had been refused by the USPTO. In a subsequent e-mail correspondence, attorney Klenk indicated that she would follow-up with 24 Hour Fitness "regarding its use of the APEX mark for '*distributorship* featuring

vitamins & fitness programs.'" (Emphasis added.) A true and accurate copy of this January 14, 2008 e-mail correspondence is attached as Exhibit C to my original declaration.

5. On January 29, 2008, I participated in a follow-up telephone conference with Klenk and Britt Anderson ("Anderson"), also of Manatt. During this call, attorneys Klenk and Anderson indicated that 24 Hour Fitness had been using the "Apex" mark to distribute products to third-party health clubs and fitness and nutrition centers for a number of years. Attorneys Klenk and Anderson confirmed that 24 Hour Fitness was not engaged in the retail sale of its products and did not have direct interaction with individual consumers. Instead, attorneys Klenk and Anderson stated that 24 Hour Fitness only distributed its products to health and fitness centers. Accordingly, based on these representations, I believed at this point that 24 Hour Fitness was not using the "Apex" mark for retail sales and that a mutual consent to use the marks was a possible basis on which to resolve the Petition for Cancellation pending before the TTAB.

6. While considering a potential consent to use agreement to resolve the TTAB proceeding, my clients became concerned that 24 Hour Fitness was expanding its use of the "Apex" marks into retail sale based on their own consideration of 24 Hour Fitness' web site.

7. Based on this new concern, I questioned whether a letter of consent would be sufficient to resolve the outstanding issues. On March 10, 2008, I sent a letter to attorney Klenk informing her of my client's longstanding use of its "Apex" marks in retail sales, and indicating that it was concerned about 24 Hour Fitness' "use of 'APEX' and 'APEX FITNESS' for retail sales of nutrition supplements and foods and exercise programs," and that 24 Hour Fitness "seems to be expanding its use of the term Apex and using it in very similar ways to" Apex Stores. (A true and accurate copy of my March 10, 2008 letter is attached as Exhibit E to my original declaration.) Notwithstanding these concerns, however, my letter clearly indicated that Apex Stores continued "to be open to settlement discussions" and hoped the parties could "resolve this

issue amicably." More particularly, I informed attorney Klenk that my client "suggests that we suspend the proceedings to permit such discussions to continue if your client is interested." I continued:

> One possible scenario would include permitting your client some period of time to continue to use the APEX FITNESS mark while phasing it out and developing a new brand identity or adopting the 24-HOUR FITNESS brand. **You and your client may also have proposals to offer that we have not considered.** (emphasis added)

8. Neither in my March 10 letter, nor any other communication before or after that letter, did I demand that 24 Hour Fitness cease and desist using the "Apex" mark altogether. Nor did I ever state that my client alleged 24 Hour Fitness infringed my client's trademark rights.

9. In a letter dated April 11, 2008, attorney Anderson responded to my March 10, 2008 letter, stating that "24 Hour Fitness continues to view a consent agreement under which the parties would agree to confine their activities under their APEX marks to their respective business areas as a potentially reasonable resolution of this matter." A true and accurate copy of this April 11, 2008 letter is attached as Exhibit F to my original declaration.

10. I thereafter engaged in e-mail correspondence with attorney Anderson regarding the consent agreement proposed in his April 11, 2008 letter. In these e-mails, I requested that attorney Anderson provide the specific terms of the proposed consent agreement so that Apex Stores could properly consider the proposal. Despite my requests, however, attorney Anderson refused to provide any specific terms for the proposal. A true and accurate copy of these e-mail correspondence, dated April 24, 2008 through May 2, 2008, were attached as Exhibit G to my original declaration.

11. On May 5, 2008, at the request of attorney Anderson, I participated in a telephone conference with attorneys Anderson and Susan Hollander ("Hollander"), also of Manatt. During this telephone conference, attorney Anderson for the first time expressed 24 Hour Fitness'

Case No. 4:08-cv-01681-SBA                    4                    SUPPLEMENTAL DECLARATION OF
                                                                   JOHN E. OTTAVIANI

position that it intended to use the "Apex" mark for retail sales of its products. Up until that conversation, 24 Hour Fitness' counsel had never informed me that 24 Hour Fitness intended to use the "Apex" mark for retail sales. Instead, I had been informed only that it used the "Apex" mark for distribution of products to health and fitness centers.

12. Based on Anderson's indication that 24 Hour Stores intended to push ahead with its use of the "Apex" mark in direct competition with the retail services of Apex LLC, as well as 24 Hour Fitness' counsel's failure to discuss any specific terms regarding the proposed agreement for mutual use of the marks, we determined that litigation was necessary to prevent infringement of the trademark rights that Apex Stores had, by then, recently transferred to Apex, LLC. Significantly, 24 Hour Fitness' counsel did not take the position in our negotiations that it intended to engage in retail sales until over one month after 24 Hour Fitness had already commenced this lawsuit on March 27, 2008.

I declare under penalty of perjury that the foregoing is true and correct. Executed on this 28th day of August, 2008.

*/s/ John E. Ottaviani*
John E. Ottaviani

Attorney Attestation

As the attorney e-filing this document, and pursuant to General Order No. 45, I hereby attest that John E. Ottaviani has concurred in this filing.

Dated: August 28, 2008

*/s/ Nathaniel Bruno*
Nathaniel Bruno